**CITY OF TYLER, Appellant,**

v.

**John Hunter BROGAN, Jr., Appellee.**

**No. 408.**

Court of Civil Appeals of Texas.

Tyler.

Feb. 13, 1969.

Troy Smith, Henry L. McGee, Jr., Tyler, for appellant.

Lawrence & Lawrence, F. Lee Lawrence, Tyler, for appellee.

DUNAGAN, Chief Justice.

This is a condemnation case. This appeal is from a judgment of the County Court of Smith County, Texas, entered upon a jury verdict in an eminent domain action wherein the City of Tyler, condemnor, sought an easement for a sewer line and a temporary working easement adjacent thereto across land owned by John Hunter Brogan, Jr., condemnee. The jurisdiction of the trial court and the performance, by condemnor, of all procedural requisites to the institution of this condemnation proceeding having been stipulated by and between the parties, the only issues to be determined in the trial court were the fair market value of the interest acquired by condemnor and the damages to the remainder of one of condemnee's tracts of land by the taking of the easement. The easement acquired crossed two separately described, but contiguous tracts of land owned by condemnee. Condemnee claimed severance damages to only one of

the tracts of land. Condemnor has perfected its appeal to this court from the judgment of the County Court.

The property sought to be acquired by this condemnation proceeding was a permanent easement, 50 feet in width, and a temporary working easement adjacent thereto, 50 feet in width, (being 25 feet on each side of the permanent easement) across property owned by the condemnee. Because the easement crosses two separate tracts of land owned by condemnee, each easement was given a separate number. One is referred to as Tract 20 and the other as Tract 20–A. The temporary working easement is for the sole purpose of acquiring the use of the property for activities connected with laying the sewer line, and terminated when the line was laid, and is not numbered.

The condemnor first contends that (a) there was no evidence and (b) the evidence is insufficient to support the jury's answers to Special Issues Nos. 2, 4, 5, 6, 7, 8 and 10; also, that each answer to said issues is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. The case was submitted to the jury upon ten Special Issues.[1]

1. "SPECIAL ISSUE NO. ONE:

"What do you find from a preponderance of the evidence was a reasonable cash market value of the 2.013 acres of land, the south tract, described as Tract #20, considered as severed land, immediately prior to September 14, 1966?

"Answer in dollars and cents.

"ANSWER: $ 2,769.00

"SPECIAL ISSUE NO. TWO:

"What do you find from a preponderance of the evidence was the reasonable cash market value of the 2.013 acres, the south tract, described as Tract #20, considered as severed land, immediately after September 14, 1966, the date of taking.

"Answer in dollars and cents.

"ANSWER: $ 553.80

"SPECIAL ISSUE NO. THREE:

"What do you find from a preponderance of the evidence was the reasonable cash market value of the 2.409 acres of land, the north tract, described as Tract #20-A, considered as severed land, immediately prior to September 14, 1966?

"Answer in dollars and cents.

"ANSWER: $ 2,000.00

"SPECIAL ISSUE NO. FOUR:

"What do you find from a preponderance of the evidence was the reasonable cash market value of the 2.409 acres of land, the north tract, described as Tract #20-A, considered as severed land, immediately after September 14, 1966, the date of taking?

"Answer in dollars and cents.

"ANSWER: $ 200.00

"SPECIAL ISSUE NO. FIVE:

"What do you find from a preponderance of the evidence was the reasonable cash market value of the working easement of 2.013 acres temporarily taken in connection with Tract No. 20, considered as severed land, immediately prior to the taking, September 14, 1966?

"Answer in dollars and cents.

"ANSWER: $ 2,769.00

"SPECIAL ISSUE NO. SIX:

"What do you find from a preponderance of the evidence was the reasonable cash market value of the working easement of 2.013 acres temporarily taken in connection with Tract No. 20, considered as severed land, immediately after the taking, September 14, 1966?

"Answer in dollars and cents.

"ANSWER: $ 2,492.10

"SPECIAL ISSUE NO. SEVEN:

"What do you find from a preponderance of the evidence was the reasonable cash market value of the working easement of 2.409 acres temporarily taken in connection with Tract #20-A, considered as severed land, immediately prior to the taking, Sept. 14, 1966?

"Answer in dollars and cents.

"ANSWER: $ 2,000.00

"SPECIAL ISSUE NO. EIGHT:

"What do you find from a preponderance of the evidence was the reasonable cash market value of the working easement of the 2.049 acres temporarily taken in connection with Tract #20-A, considered as severed land, immediately after the taking September 14, 1966?

"Answer in dollars and cents.

"ANSWER: $ 1,800.00

"SPECIAL ISSUE NO. NINE:

"What do you find from a preponderance of the evidence is a reasonable cash market value of the 6.123 acre tract of

■ A number of expert value witnesses was called to the witness stand to give their opinion as to the reasonable cash market value of the respective tracts inquired about in each of the Special Issues here involved. The competency of the witnesses to so testify is not challenged. They testified in detail as to their opinion as to the reasonable cash market value of the respective tracts affected by the condemnation action by the City of Tyler and the basis upon which they arrived at such opinion. The value as found by the jury in their answer to each of the issues here in question is well within the range of the value testimony received. Therefore, we find the jury's answer to each issue here in question is amply supported by the evidence and is not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

■ In passing upon the "no evidence point" and "insufficient point," we are mindful of the following rules of law that govern us as an appellate court: In all points charging "no evidence" we must examine only that evidence, together with all proper inferences and intendments therefrom, which is favorable to the jury's finding, ignoring all other evidence, and if we find some evidence to support the jury's finding, it must be sustained and the point of error overruled. In passing on the "insufficient evidence" points, we have considered all the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

The next contention of condemnor (appellant) is that the court should not have admitted, over its objection, testimony of condemnee's (appellee) expert witnesses placing a value upon the severed land in question by computing the percentage value of such severed land on the basis of an average per-acre value for the entire tract of which such severed land is a part. Thus, the question presented by this point is whose witnesses on value used the correct appraisal techniques, the condemnor's or the condemnee's.

The condemnee's witnesses appraised the parent tracts as a whole, which when divided by the number of acres, gave an average value per acre. They then testified that the tracts taken, considered as severed tracts, had this same average value. They did not use the "piecemeal" appraisal method urged by condemnor.

The condemnor's witnesses, on the other hand, considered the tracts taken as individual pieces of property, and not as a part of the whole.

In Rayburn, Texas Law of Condemnation, page 415, Sec. 135, we find this statement:

"Whatever may be said about the pros and cons of the argument, on the meaning of, 'considered as severed land,' we think from the practical standpoint that the triers of fact in Texas have always, and probably always will, assign a market value to that part taken, which bears a direct proportion, or percentage of its value, compared to a valuation of the entire tract, lot, or parcel of land.

"This must of necessity be the meaning intended to be conveyed by this term, for any other meaning would end in a morass of uncertainty and absurdity.

"To consider a sliver of land two feet wide and 1500 feet long as entirely segregated and set apart from the parent tract in actuality, and attempt to assess

land lying between the railroad and Tract 20-A, immediately prior to September 14, 1966?
"Answer in dollars and cents.
"ANSWER: $   5,082.00
"SPECIAL ISSUE NO. TEN:
"What do you find from a preponderance of the evidence is a reasonable

cash market value of the 6.123 acre tract of land lying between the railroad and Tract 20-A, immediately after Sept. 14, 1966?
"Answer in dollars and cents.
"ANSWER: $   3,557.40    "

a value to it, particularly market value, would end in a finding of zero which would violate the constitutional mandate more times than not, that money must first be paid for the tract, before the constitutional demands have been met.

"This we submit, points up the strength of the reasoning, that the true meaning of this phrase, 'considered as severed land,' is a meaning that envisions a valuation of hypothetical market value for the part taken as a proportionate part of the whole, but with the further command, that it is to be thought of thereafter in deliberations, *as having already been set apart, severed, separated and its proportionate value fixed, set aside and not to be taken into account in any other, or further deliberations, or calculations.*"

 In a condemnation proceeding, it is the rule in this state that, where the tract taken is a self-sufficient economic unit, independent of the remainder of the parent tract, the value thereof should be ascertained by considering such portion alone, and not as a part of the entire tract. State v. Meyer, 391 S.W.2d 471, (Tex.Civ. App., Corpus Christi, 1965, affirmed, 403 S.W.2d 366). But where such tract is a non self-sufficient economic unit, independent of the remainder of the parent tract, the value thereof is ascertained by evaluating such portion as a proportionate part of the entire tract. Rayburn, Texas Law of Condemnation, (1968–1969), Pocket Part Supplement, Sec. 135, page 84.

The evidence in this case shows that each of the tracts taken is a non self-supporting unit, independent of the remainder of the parent tracts from which such land was severed. This fact seems to be conceded by the parties in their briefs.

We think the evidence in this case brings it under the rule of law set out in Rayburn, Texas Law of Condemnation, as above stated and consequently the trial court did not err in admitting the testimony here complained of.

We have examined each of appellant's points of error. They are overruled.

Judgment affirmed.