Alice I. ROBERTS, Nee Alice I. Brucks, et vir.

v.

STATE of Texas.

No. 04–87–00631–CV.

Court of Appeals of Texas, San Antonio.

July 13, 1988.

Rehearing Denied Aug. 12, 1988.

Craig L. Austin, San Antonio, for appellants.

Elliott Mitchell, Asst. Atty. Gen., Austin, for appellee.

Before BUTTS, REEVES and CHAPA, JJ.

OPINION

CHAPA, Justice.

This appeal involves a condemnation case in which appellee, the State of Texas, is the condemnor, and appellants, Alice and Joe Roberts, are the condemnees. The appeal arises from an adverse judgment to appellants based upon jury findings. We reverse and remand.

The critical issue is whether the trial judge committed reversible error in refusing appellant's request that the jury be instructed "... in arriving at the value of the (land) taken by the State ... you will not consider or take into account any enhancement or damages to the value of the remaining (land) ..." Because we hold reversible error was committed, the remaining points of error will not be addressed. TEX.R.APP.P. 90(a).

Appellee sought to condemn for highway purposes 13.083 acres of land from a tract containing 129.75 acres owned by appellants. The Special Commissioners awarded appellants $76,369.05 for the taking which appellants withdrew from the registry of the court. In response to special issues, the jury found the fair market value of the condemned acreage to be $56,290.50. The court's judgment therefore ordered appellants to pay appellee the difference of $20,078.55 which has resulted in this appeal.

The case was tried to a jury in August and September, 1986. In effect at the time of the trial was TEX.PROP.CODE ANN. § 21.042(e) (Vernon 1984) which provided, in part:

... In awarding compensation or assessing the damages, the special commissioners shall consider any special and direct benefits that arise from the highway improvement that are peculiar to the property owner and that relate to the property owner's ownership, use, or enjoyment of the particular parcel of remaining real property.

It is clear that the land condemned at the time of the taking, had a higher per acre market value than the remainder. How-

ever, appellee took full advantage of § 21.042(e), and presented appraisal evidence encouraged by the statute which subsequent to this trial was condemned as unconstitutional in *State of Texas v. Enterprise Co.*, 728 S.W.2d 812 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) and which had previously been frowned upon by the Supreme Court in *State v. Meyer*, 403 S.W.2d 366 (Tex.1966). Appellee's witnesses presented testimony justifying lower market value on the frontage land taken through the application of the "average value" theory. Contending that the remainder of the tract was specially benefitted by the frontage taken being replaced by an equal frontage on the remainder, appellees contended the taken acreage should receive only "average" value after averaging the entire tract. Thus, through the use of this statute, appellee's witnesses were able to evaluate the land taken as a part of the entire tract and not alone. This brought about the following requested instruction by appellant which was denied:

> You are instructed that in arriving at the value of the 13.083 acres taken by the State of Texas, you will not consider or take into account any enhancement or damage to the value of the remaining 120.768 acres.

In their principal complaint, appellants argue that considering the entire record, the refused instruction amounted to reversible error. We agree.

Article I, § 17 of the Texas Constitution directs that adequate compensation is required before any person's land can be taken for public use.

The Texas Supreme Court has determined what adequate compensation meant for the land taken, stating:

> It is well settled that "the value of the part taken should be ascertained by considering such portion *alone, and not as a part of the larger tract ...*" and "enhancement in market value of the residue of the land by reason of 'special benefits' is a legitimate offset to damages thereto, *but not to the value of the part actually taken."* *State v. Carpenter,* [126 Tex. 604, 89 S.W.2d 194 (1936)] at 197 and 201. (emphasis added)

*State v. Meyer, supra,* at 375 (Tex.1966). Further, in rejecting the "average value" theory employed by appellee and encouraged by § 21.042(e), the Texas Supreme Court added:

> In the present case, it is beyond dispute that the land being condemned had, *at the time of the taking,* a significantly higher per acre market value than the land not being condemned which lay further from the highway. The State's theory is that since the frontage of the highway has merely moved over to the remaining land of respondents, thereby increasing the value of the newly abutting land, in effect, the State has only condemned a composite 14.9456 acres of the whole tract. We cannot agree with this theory. Such post-condemnation increase in value of the respondents' remaining land may occur, but the conclusion is inescapable that such appraisal would result in offsetting the estimated enhanced value of the remainder after the condemnation against the market value of the part taken at the time of the condemnation.

*State v. Meyer, supra,* at 375.

■ Special instructions to a jury as to what they should not consider in determining market value are appropriate, when the record is such that additional guidance of the jury is required in this respect. *City of Beaumont v. Marks,* 443 S.W.2d 253 (Tex. 1969); *State v. Cartwright,* 351 S.W.2d 905 (Tex.Civ.App.—Waco 1961, writ ref'd n.r. e.). In determining what a valid instruction should be to adequately inform the jury, the Court in *State v. Cherry,* stated:

> Likewise, the Supreme Court, in *State v. Walker,* 441 S.W.2d 168 (Tex.1969) explains that the "severed land" instruction really means "considered entirely apart from the increase or decrease in the value of the remaining land." Even an experienced condemnation lawyer may have difficulty with these mental gymnastics. Expecting juries to perform them seems to assume a degree of mental agility which jurors are not usually

supposed to possess. Counsel for the landowner should not have the burden to persuade the jury to adopt an interpretation which seems to vary from the literal meaning of the language used in the charge.

\* \* \* \* \* \*

For these reasons we conclude that in the *Uselton* submission, the "severed land" instruction *is not required and may be prejudicial to the landowner.* Moreover, it *may be confusing to expert witnesses in that it tends to prevent them from including in the value of the part taken any additional value it may have as a part of the whole.* Therefore, we suggest that in place of the phrase *"considered as severed land,"* the trial court used the words "considered entirely apart from the increase or decrease in value of the remaining land." *This is the true meaning of the "severed land" instruction, as the Supreme Court explained in State v. Walker, supra.* This modified instruction will avoid the possibility, which troubled the *Carpenter* court, *that the jury might include severance damage to the remainder in valuing the part taken, and will also avoid the possibility that the jury might find the value of the part taken to be materially less than its value when considered as a part of the whole.*

*State v. Cherry,* 517 S.W.2d 337, 342–343 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r. e.).

■ The law is unchanged by TEX. PROP.CODE ANN. § 21.042(e) since it was declared unconstitutional subsequent to the trial before us. In *State v. Enterprise Company,* the court stated:

In 1984 the Legislature added subsection (e) to TEX.PROP.CODE § 21.042. The new subsection states:

In awarding compensation or assessing the damages, the special commissioners shall consider any special and direct benefits that arise from the highway improvement that are peculiar to the property owner and that relate to the property owner's ownership, use, or enjoyment of the particular parcel of remaining real property.

The language and the legislative history of this new subsection suggests that the Legislature might have intended to change the method for determining adequate compensation for land condemned for highway purposes. *However, the Texas Supreme Court has held that "adequate compensation" means the market price of the land actually taken without any reduction for estimated benefits to the condemnee's remaining land.* If this principle is to be changed, it must be done directly and not merely by suggestive language. The Texas Constitution has been clearly interpreted as disallowing such a deduction. If a statute changing this principle is to be constitutional, the Supreme Court of Texas must say that it is or the Texas Constitution must be amended.

*State v. Enterprise Company, supra,* at 813.

In the instant case, the requested instruction reaches the same results as the one suggested by *State v. Cherry.* As in *City of Beaumont* and *Cartwright,* this record indicates the need for a special instruction to the jury because of the confusing evidence encouraged by § 21.042(e), since declared unconstitutional. The court erred in refusing the instruction.

Appellee argues however, that if the court erred, it was harmless error because the jury's answers to issues 2 and 3 find no difference in market value of the remainder before and after the taking. We disagree.

The evidence presented by appellee in support of the "average value" theory, which the jury apparently embraced, supported a finding of no difference in the value of the remainder before and after the taking. In this respect, the record reflects the following testimony of appellee's witness A.C. Swethelm:

Q: Now you stated that you found enhancement to the remainder in this case.

A: It depends upon how you look at it. There is enhancement to the remain-

der looking at the remainder after having frontage as compared to the remainder before not having frontage.

Q: If you found enhancement to the remainder, why then are there no differences between your before and after figures?

A: Because I used the average concept and in the average concept there is no need to have an increase. If on the other hand I had appraised it as you have indicated, putting higher value—or you had indicated your appraisers would put a higher value on the frontage, then of course you must take into account that the remainder has frontage after the taking.

Q: Well, I can't find your appraisal. But you found that the remainder was worth the same before and after, didn't you?

A: Because of the technique that I used, yes, sir that's right.

To hold that the answers to issues 2 and 3 brought about by the same "average value" appraisal rejected by the Supreme Court in *State v. Meyer* and encouraged by an unconstitutional statute makes the error harmless, would be manifestly unjust. This, in fact, brought about the need for the special instruction. Since the court and parties were unaware § 21.042(e) would be declared unconstitutional after this trial, appraisal evidence which might well have been challenged successfully under the adequate compensation principals set forth by the Texas Supreme Court, went unchallenged. *State v. Meyer, supra.* The appraisal theory advanced by appellee and condemned by *State v. Meyer*, led to the "inescapable [conclusion] that such appraisal would result in offsetting the estimated enhanced value of the remainder after the condemnation against the market value of the part taken at the time of the condemnation." *State v. Meyer, supra* at 375. The jury answers to issues 2 and 3 further suggest this harmful "inescapable conclusion," which could have been cured by the requested instruction. The error was pre-served, harmful, and amounted to reversible error.

The judgment of the trial court is reversed and the cause is remanded for a new trial.