The STATE of Texas, Petitioner,

v.

Jerry WINDHAM, et al., Respondents.

No. D–0619.

Supreme Court of Texas.

June 10, 1992.

Rehearing Overruled Oct. 21, 1992.

Mark Heidenheimer, Dan Morales, Austin, for petitioner.

Vaughan E. Waters, A.W. Davis, Bryan, for respondents.

## OPINION

CORNYN, Justice.

We decide in this condemnation action involving a partial taking whether the trial court erred by excluding evidence offered by the condemnor, controverting that offered by the landowner and admitted by the court, regarding the appropriate economic unit to be considered by the jury for determining the market value of the part taken. We hold that the trial court reversibly erred by excluding such evidence. Because the court of appeals affirmed the trial court's erroneous exclusion of the condemnor's evidence, 803 S.W.2d 340, we reverse the judgment of the court of appeals and remand this case for a new trial.

This dispute arose when the petitioner, the State of Texas acting through its Department of Highways and Public Transportation, condemned approximately two acres out of a nineteen acre tract belonging to respondents, Jerry Windham and Frank Thurmond (collectively referred to as "Windham"). The part taken consists of a 110 foot deep strip of Windham's land lying immediately adjacent to State Highway 6 to be used for widening the existing highway. The county court appointed a panel of special commissioners to determine the amount of adequate compensation to be paid by the State to Windham. *See* TEX. PROP.CODE § 21.014. The commissioners awarded Windham $60,250.00 in damages. *See* TEX.PROP.CODE § 21.042. Windham objected to the commissioners' award and appealed to the county court.

Prior to trial, Windham filed a motion in limine in which he stipulated to the State's right to condemn the 2.12 acres sought by the State and expressly waived his right to damages to the 16.88–acre remainder. However, Windham purported to unilaterally designate a larger strip of land, 200 feet wide and consisting of 3.84 acres immediately adjacent to the existing highway, as the economic unit upon which he contended the market value of the part taken should be based.

Windham contended the 2.12 acres taken by the State was configured in such a manner that it could not be considered a self-sufficient economic unit for commercial development purposes which, in Windham's opinion, was the highest and best use of his property. Windham argued that a 200 foot wide strip could be used for commercial development and thus, an additional 1.64 acres should be added to that sought by the State to comprise the appropriate economic unit to be considered by the jury in assessing the market value of the land condemned. Windham's motion in limine sought to exclude evidence of the market value of the 19–acre tract as a whole, and of the value of the condemned tract as a percentage of the whole, because he contended such an "averaging" method of valuation would not constitutionally compensate him for his loss.

The trial court granted Windham's motion in limine and ordered that all testimony regarding the market value of the part taken be based on the 3.84–acre tract designated by Windham as the appropriate economic unit. The court did not allow the State to present evidence to support its contention that the market value of the condemned land should be based on an economic unit consisting of the entire 19–acre tract, which it contended had a highest and best use of being held for investment purposes. Thus the only evidence of the appropriate economic unit to be used for

valuation purposes that the jury heard was Windham's.

After the trial court excluded the State's proffered evidence of the appropriate economic unit, the State perfected a bill of exception consisting of the testimony of its expert, Clemo Ray. Ray's testimony disputed Windham's economic unit analysis; he testified instead that the entire 19 acres formed the appropriate economic unit based on the highest and best use of the property and he proffered his opinion of the market value of the condemned property based on this analysis. In Ray's opinion, the highest and best use of the land was to hold it for investment purposes because high density commercial development was not at that time economically feasible. Ray testified that because each acre of the 19 acres was of equal value, in his opinion, the land in close proximity to the highway was of equal value to that farther away from the highway. Moreover, Ray also disagreed with Windham's claim that the 3.84 acres adjacent to the highway comprised an independent economic unit because there was no current demand to subdivide the property into tracts of that size. Based on these premises, Ray appraised the value of the entire 19–acre tract at $0.77 per square foot. Because each acre had an equal value in his opinion, he valued the 2.12–acre part taken by the State at $0.77 per square foot for a total value of $71,000.00.

Ray was, however, allowed to present some expert testimony before the jury. His testimony was confined by the court's ruling on the motion in limine to a valuation based on the economic unit designated by Windham. Using comparable sales in the area as his method of determining market value, Ray testified that the value of the 3.84–acre tract was $1.00 per square foot. Experts testifying on behalf of Windham appraised the designated 3.84–acre tract at a figure between $1.50 and $2.00 per square foot. Ultimately, the jury found the market value of the 2.12–acre tract taken by the state to be $1.50 per square foot, or $138,520.50.

The trial court rendered judgment in accordance with the jury's verdict.[1] The court of appeals affirmed the trial court's judgment based on its interpretation of *Buffalo Bayou, Brazos & Colorado R.R. Co. v. Ferris*, 26 Tex. 476 (1863), which construed the precursor of Article I, section 17 of our constitution. That section provides: "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." TEX. CONST. art. I, § 17. In *Buffalo Bayou*, this court construed the phrase "adequate compensation" in a virtually identical provision in the 1861 Texas Constitution to require the payment of money for the property taken without reference to any profit or advantage to any remaining property by construction of the improvements for which the property was taken. 26 Tex. at 488–89 (construing TEX. CONST. art. I, § 14 (1861, amended 1876)). We later reaffirmed this construction as applied to article I, section 17 of our current constitution in *Dulaney v. Nolan County*, 85 Tex. 225, 20 S.W. 70, 71 (1892) and *State v. Carpenter*, 126 Tex. 604, 609, 89 S.W.2d 194, 197 (1936).

In *Carpenter*[2] we held that when only a part of the land is taken, the "just compen-

---

1. The State deposited the sum of $60,250.00, the amount of the commissioners' award, into the registry of the court for the use and benefit of Windham. Windham withdrew this amount by order of the court. The judgment deducted the amount already received by Windham from the amount found by the jury to be the market value of the condemned property for a net award of $78,270.50 plus pre-judgment and post judgment interest and all costs of court.

2. We recognize that *Carpenter* was disapproved in part in *State v. Meyer*, 403 S.W.2d 366, 375 (Tex.1966). However *Carpenter* was disapproved only to the extent "there is language therein inconsistent with the rule of valuation announced in this opinion", 403 S.W.2d at 375, referring only to the impermissibility of averaging the value of the land taken with that of the remainder; we do not cite *Carpenter* for the disapproved purpose. This court has otherwise repeatedly affirmed the standard of "just compensation" pronounced in *Carpenter,* and upon which we rely, both before and after *Meyer.* See, e.g., *Uselton v. State*, 499 S.W.2d 92, 97–98 (Tex.1973); *City of Pearland v. Alexander*, 483

sation" to which the owner is entitled consists of two elements: 1) the market value of the part taken, and 2) the damage to the remainder due to the taking and construction of the improvement for which it was taken. 89 S.W.2d at 197. *Carpenter* established the rule that the market value of the part taken is determined by considering it as "severed land" at the time it was condemned. *Id.* at 201. The court's primary concern was one of duplication of damages if the value of the part condemned is considered in relation to the whole property when damages to the remainder are also claimed. This is because when the market value of the part taken is considered as a part of the whole it "necessarily involve[s] the idea of damage to the remainder ...," a separate element of damages when sought. *Id.* at 196. (citing *Jeffery v. Chicago & M. Elec. R.R. Co.*, 119 N.W. 879, 884 (Wis.1909)).

Thirty years later, in *State v. Meyer*, we recognized the right of the landowner in a condemnation case to waive his claim for damage to the remainder and proceed to trial solely on the issue of the market value of the land taken. 403 S.W.2d 366, 374 (Tex.1966). Therefore, when the landowner waives his claim for damage to the remainder, the trial court properly excludes evidence of any enhancement of value to the remainder because it is legally irrelevant to the issue of the market value of the part taken. *Id.* Further, *Meyer* expressly disapproved calculation of fair market value based on the "average" unit value of the entire tract when it is undisputed that the land taken has a higher unit value than the remainder at the time of its condemnation. *Id.* at 375.

■ When the severed portion of the land can be considered as an independent economic unit, the market value can be determined without reference to the remainder. *See City of Tyler v. Brogan*, 437

S.W.2d 244, 247 (Tex.1972); *State v. Walker*, 441 S.W.2d 168, 175 (Tex.1969); *City of Austin v. Cannizzo*, 153 Tex. 324, 329, 267 S.W.2d 808, 812 (1954).

3. Question No. 1, the only jury question submitted, inquired as follows:

S.W.2d 609, 613 (Tex.Civ.App.—Tyler 1969, no writ). A different situation arises, however, when the portion of the land taken by the State, considered without reference to the remainder, cannot be considered an independent economic unit reflecting the highest and best use of the property and would thus deprive the land owner of adequate compensation for the part taken if considered solely as severed land. Tex. Const. art. I, § 17; *City of Richardson v. Smith*, 494 S.W.2d 933, 936 (Tex.Civ. App.—Dallas 1973, writ ref'd n.r.e.). In such instances the market value must necessarily be determined by considering some portion or all of the remainder in order to construct an economic unit.

■ The State contends that it has a right to offer competing evidence of the appropriate economic unit for the jury to consider based on its opposing view of the highest and best use of the land. Windham did not seek damages to part or all of his remainder as such. To the contrary, he contends that the 2.12 acres the State took must be valued based on the per square foot value of a 3.84-acre economic unit he designated.[3] This, Windham asserts, is because the highest and best use of the property cannot be accomplished on the 2.12 acres of condemned property as configured, and that the law reserves only to the condemnee the right to designate the economic unit under these circumstances. The State counters that when the highest and best use of the land is disputed, it is for the jury to decide which use is appropriate, and thus whether the condemnee's evidence of valuation is correct, when it determines the market value of the condemned tract. It disagrees that the landowner has the legal right to designate unilaterally an economic unit for valuation purposes that the condemnor cannot controvert. We agree with the State.

From a preponderance of the evidence, what do you find was the market value of the 2.12 acre (92,347 square feet) strip of land condemned for highway purposes on February 28, 1986, considered as severed land?
Answer in dollars and cents.
ANSWER: <u>138,520.50 ($1.50 sq. ft.)</u>

Market value is "the price which the property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying it." *Carpenter*, 89 S.W.2d at 202. In deciding market value the jury is permitted to consider all of the uses to which the property is reasonably adaptable and for which it is, or in all reasonable probability will become, available within the foreseeable future. *City of Austin v. Cannizzo*, 153 Tex. 324, 334, 267 S.W.2d 808, 815 (1954). Here the trial court properly instructed the jury to consider all uses to which the property is reasonably adaptable, including its highest and best use. If Windham is permitted to present evidence of the market value of the part taken utilizing a larger tract than that sought by the condemning authority based on its theory of the highest and best use of the property, then the State should be allowed to present evidence based on its competing theory of the highest and best use of the property. It is then for the jury to decide which evidence to accept and which to reject in deciding the ultimate issue of market value.

Windham contends that the condemnee has the absolute right to designate the appropriate economic unit to determine the market value of the severed land, relying on *Southwestern Bell Telephone Co. v. Ramsey*, 542 S.W.2d 466 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). But this reliance is misplaced. In *Ramsey*, the condemnee owned a 320–acre tract used entirely for grazing purposes. *Id.* at 470. The condemnor took an easement to run utility lines measuring 10 × 3,515 feet, or 0.807 acre. The landowners first sought, and the jury awarded, damages for the 10 foot strip taken by the telephone company. Additionally, the landowners sought, and the jury awarded, severance damages for a part of the remaining land consisting of a 240 foot strip of land adjacent to and running the entire length of the easement, comprising 19.36 acres. By motion in limine, the landowners disclaimed any right to damages to the rest of the remaining land. The trial court entered judgment for the landowner based on this theory and the

jury's findings. Neither party disputed that the highest and best use of the land taken as well as the 240 foot strip of land immediately adjacent to that taken was for commercial or industrial purposes. *Id.*

On appeal, the telephone company claimed that the exclusive method of valuation when the part taken was not a "self-sufficient economic unit," as both parties agreed the condemned 10 foot wide strip was not, was to consider the average price per acre of the entire remainder. *Id.* at 470. The court of appeals disagreed. It held that the trial court did not err when it allowed the condemnee to designate a 240 foot strip of land adjacent to the 10′ strip condemned for which it sought remainder damages. The court held:

> Ordinarily a landowner has a right to claim severance damages to the entire remainder provided it is contiguous and there is unity of use. (cases cited). This is not to say, however, that a landowner is compelled to claim severance damages to his entire remaining land. In instances where a substantial portion of the remainder is suitable and adaptable to commercial or industrial use, or some other specific use, and the other part of the remainder is not suitable or adaptable to the same purpose, the landowner is permitted to claim severance damages to only that portion thereof suitable and adaptable to specific uses. (case cited).

*Id.* at 472. The *Ramsey* court noted that when the landowner claimed damages to the remainder, the landowner has the burden of proving those damages. And, since the landowner had that burden to prove damages, the *Ramsey* court found nothing wrong, under the facts of that case, with allowing the condemnee to waive his claim for damages to part but not all of the remainder. *Id.* at 472. *Ramsey*, however, is readily distinguished from this case by the fact that Windham claims the right to limit the jury's consideration to what he believes to be the appropriate economic unit. Windham did not, like the landowners in *Ramsey*, seek damages for the 2.12 acres the State condemned and additional, remainder damages for part but not all of

the remaining 19 acres. Windham was able, under the trial court's erroneous ruling on the motion in limine, to limit the expert testimony to the 3.84–acre tract it designated as the appropriate economic unit and thus apply the value found per square foot to the 2.12 acres it concedes could not constitute an independent economic unit. Because of this distinction, *Ramsey* plainly does not control our disposition of this case.

Because the trier of fact should be able to consider all competing evidence of valuation supported by otherwise admissible expert testimony, the trial court erroneously excluded the State's evidence of the economic unit to be considered by the jury in deciding the market value of the part taken[4]. Because such error obviously substantially affected the jury's finding on the only contested issue in the case, we hold that such exclusion was harmful error. *See* Tex.R.App.P. 81(b)(1). Therefore, we reverse the judgment of the court of appeals which affirmed the judgment of the trial court and remand this cause for a new trial.

DOGGETT, J., concurs.

MAUZY, J., dissents.

DOGGETT, Justice, concurring.

I concur in today's judgment because of my confidence in the jury system. In this case, the jury should be able to consider evidence of a common value between the portion of property taken and that not taken. In *State v. Meyer*, 403 S.W.2d 366 (Tex.1966), a valuation based on the worth of the entire property was rejected because "it is beyond dispute that the land being condemned had, *at the time of the taking,* a significantly higher per acre market value than the land not being condemned...."

*Id.* at 375 (emphasis in the original). Here, the State seeks to offer evidence that all of the property, the taken as well as the untaken, shared an equal value. *See* 803 S.W.2d at 340. Whether that evidence supports a finding of a shared value is properly determined by a jury. *See City of Richardson v. Smith,* 494 S.W.2d 933, 938–39 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.).

MAUZY, Justice, dissenting.

The court today legitimizes a mechanism that dramatically enhances the State's power to deprive Texas landowners of their property without full compensation. At issue is whether a landowner has the right to designate an economic unit reflecting the highest and best use of property condemned by the State. Because today's opinion compromises that right, I dissent.

The Texas Constitution prohibits the State from taking property for public use without "adequate compensation." Tex. Const. art. I, § 17. This provision, we have held, entitles a landowner to be compensated for the full value of the land taken, without reference to any effect the taking might have on the remaining property. *State v. Carpenter,* 126 Tex. 604, 609, 89 S.W.2d 194, 197 (1936); *see Buffalo Bayou, Brazos & Colorado R.R. Co. v. Ferris,* 26 Tex. 476 (1863) (construing the predecessor of art. I, § 17).

Since *Buffalo Bayou,* courts have enforced the constitutional guarantee of adequate compensation by allowing the landowner to choose the method by which the value of the land taken is determined. Under one such method, recognized and approved in *State v. Meyer,* 403 S.W.2d 366, 374 (Tex.1966), the landowner may waive all severance damages and seek an apprais-

---

4. The State also relies on section 21.042(e) of the Texas Property Code which requires the special commissioners appointed to assess damages in a condemnation case to do so "regardless of whether the property owner makes a claim for damages to the remaining property." Tex.Prop.Code § 21.042(e).

Windham contends that this section of the Property Code is unconstitutional in reliance on *State v. Enterprise Co.,* 728 S.W.2d 812 (Tex.

App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Because of our disposition of this case we do not reach this issue. We will not pass on the constitutionality of a statute when the case may be decided on independent, alternative grounds. *Baptist Hosp. of Southeast Texas, Inc. v. Baber,* 714 S.W.2d 310, 310 (Tex.1986); *San Antonio General Drivers, Helpers Local No. 657 v. Thornton,* 156 Tex. 641, 647, 299 S.W.2d 911, 915 (1957) (orig. proceeding).

al of the part taken as a severed unit.[1] If the part taken is not a self-sufficient economic unit, the landowner may designate a larger area subsuming the part taken for the purpose of determining a fair per-acre value. *Southwestern Bell Tel. Co. v. Ramsey,* 542 S.W.2d 466, 472 (Tex.Civ. App.—Tyler 1976, writ ref'd n.r.e.).

The law as developed in *Meyer* and *Ramsey* recognizes the landowner's right to focus the jury's attention exclusively on the part taken, or on a designated area subsuming that part. This approach is consistent with the axiom of *State v. Carpenter:* the landowner's compensation for the part taken is to be determined without reference to the remainder.

The law was thus clear on this point until 1983, when the Texas Legislature, apparently dissatisfied with *Carpenter,* decided to change this basic rule. With its enactment of section 21.042(e) of the Texas Property Code, the legislature sought to mandate consideration of "any special and direct benefits that arise from the highway improvement ... that are peculiar to the property owner and that relate to the property owner's ownership, use, or enjoyment of the particular parcel of remaining real property." Texas courts have rightly rejected this statute as a legislative attempt to circumvent the constitution by denying the condemnee adequate compensation. *State v. Enterprise Co.,* 728 S.W.2d 812 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *see also Roberts v. State,* 754 S.W.2d 477, 481 (Tex.App.—San Antonio 1988, writ denied).

With today's opinion, the court effectively resurrects the statute held unconstitu-

tional in *Enterprise* and *Roberts.* Even when a landowner waives damages to the remainder, a court will now be obligated to allow evidence concerning the remaining land whenever the State offers a land valuation theory based on the whole tract. This approach undercuts the protections articulated in *Meyer* and *Ramsey,* and effectively deprives the landowner of the right to choose a method of valuation.

The method chosen by the landowner in this case is essentially the same as the method chosen by the landowner in *Ramsey.*[2] In both cases, the condemned land abutted a highway, and was thus substantially more valuable than the rest of the tract. In both cases, the land condemned was too small to be a self-sufficient economic unit, so the landowner designated a larger area subsuming the part taken for the purpose of determining a fair per-acre value. And in both cases, the trial court properly excluded any evidence concerning the remaining land.

This time, though, this court steps in to change the rules. No longer will a landowner have the right to choose an appropriate economic unit for the highest and best use of his or her own property. Nor will the landowner be able to prevent the admission of evidence concerning the entire remainder. All the State need do is assert that the highest and best use of the property would result in a constant value per acre throughout the tract, and the trial court will be obligated to admit evidence that clearly would have been inadmissible under *Meyer* and *Ramsey.*

---

**1.** In *Meyer,* the State had sought to introduce evidence that the landowners retained access rights on the condemned property. We upheld the trial court's granting of a motion in limine excluding the evidence, noting that admission of the testimony would have improperly permitted the jury to consider an element of enhancement to the remainder. *Id.* at 374.

**2.** One court has held that, under *Ramsey,* a landowner has "an absolute right to the exclusion of evidence of the existence and potential uses of the non-designated remainder," provided that "the highest and best use of the designated remainder is one to which no part of the non-

designated remainder is suitable or adaptable." *State v. Oak Hill Joint Venture,* 815 S.W.2d 827, 831 (Tex.App.—Austin 1991, no writ). Here, Windham showed that the highest and best use of the designated remainder was as commercial frontage property—a use for which the rest of the property was clearly not suitable. Thus, the trial court properly excluded the State's evidence regarding the non-designated remainder. *See also City of Richardson v. Smith,* 494 S.W.2d 933, 938–39 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.) (if part taken differs materially from remainder, all references to remainder must be excluded).

I would adhere to the case law that has long guaranteed Texas landowners the right to adequate compensation for the taking of their property. I would affirm the judgment of the court of appeals.

