TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00190-CV






Guadalupe-Blanco River Authority, Appellant



v.



Marvin Kraft, Sr., Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY


NO. 6082-C, HONORABLE LINDA A. RODRIGUEZ, JUDGE PRESIDING







 Appellant Guadalupe-Blanco River Authority (the Authority) brought a
condemnation action against appellee Marvin Kraft, Sr. The issue of damages was tried to a jury,
which returned a verdict for $64,400. On appeal, the Authority challenges the reliability of the
methodology of Kraft's expert witness. We affirm.


FACTS

 Kraft owns a 272-acre unimproved tract of land in Hays County. The Authority
brought a condemnation action against Kraft for acquisition of an easement and right-of-way across
his land in order to lay a water pipeline.(1) The easement consists of a 30-foot wide strip, 4600 feet
long, totaling 3.21 acres, which cuts diagonally across part of Kraft's acreage. The pipeline and
related improvements are underground except for pipeline drain-valve assemblies, air releases, and
vacuum-valve assemblies. The Authority has a perpetual right of access to maintain the pipeline
and all of these devices. In the condemnation action, the Authority also sought two temporary
easements, each thirty-five feet wide, on either side of the pipeline easement.

 Because Kraft did not challenge the right to acquire the easement, the only issue for
jury determination was the fair market value of the easement. At trial, the jury returned a verdict
indicating the fair market value of the property taken was $64,400, and the trial court rendered
a final judgment in that amount. The Authority appeals that judgment raising three points of error: 
(1) the methodology employed by Kraft's expert was not reliable, (2) the court abused its
discretion in admitting the expert's testimony, and (3) without this testimony, there was no
evidence of damages in the amount of $64,400. The Authority asks us to reverse and render
judgment that Kraft recover only $7,630 based on its own expert's testimony.


DISCUSSION

 The basis for an expert's testimony must be reliable to be admissible. Gammill v.
Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 726 (Tex. 1998). The trial court, in discharging
its duty as gatekeeper, must determine how to assess the reliability of particular testimony. Id. 
There must be some basis to show the reliability of the opinion offered. Id. The criteria for
assessing reliability will vary depending on the type of expert and the nature of the evidence. See
id. at 726-27. In some cases, an expert's experience alone may provide a sufficient basis for such
testimony. Id. at 726. The trial court has broad discretion in determining admissibility of an
expert's testimony, and we will reverse only if the trial court abuses that discretion. See E.I. du
Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 556-57 (Tex. 1995); City of Harlingen v.
Estate of Sharboneau, 1 S.W.3d 282, 285 (Tex. App.--Corpus Christi 1999, pet. granted). We
gauge abuse of discretion by whether the trial court acted without reference to any guiding rules
or principles. Robinson, 923 S.W.2d at 558. This Court may not reverse for abuse of discretion
merely because we disagree with the decision of the trial court. Id.

 We first consider Kraft's contention that the Authority did not preserve any alleged
error for appellate review. Kraft argues that the Authority inadequately apprised the trial court
of the basis for its objection to the testimony of his expert, Kirby Gholson. Further, he contends
that the Authority did not move to strike or restrict Gholson's testimony and failed to object to the
tender of the appraiser's summaries and the jury instructions. As Gholson began testifying about
his market valuation of the easement, the Authority objected, "I'm going to make an objection
based upon the failure of this witness's methodology to meet the reliability standards as articulated
by the Supreme Court in Gammill versus Jack Williams Chevrolet as applying to all expert
testimony." This objection adequately informed the trial court to rule on the reliability of
Gholson's methodology and hence, its admissibility. See Tex. R. App. P. 33.1(a)(1)(A). The trial
court excused the jury and allowed both parties to question Gholson on voir dire. After the
hearing, the court overruled the Authority's objection. This was sufficient to preserve error. See
id. 33.1(a)(2)(A). Therefore, we conclude that the Authority preserved its complaint for our
review.


I. Reliability of Expert's Methodology

 The Authority contends that the methodology employed by Gholson was not reliable
and his opinion should not have been admitted. During voir dire, Gholson described three
methods appraisers use to determine the value of condemned property: income, cost, and sales-comparison. Gholson explained that he used the sales-comparison approach in evaluating the
easement at issue, which involves "search[ing] the market for what's considered to be . . . sales
comparable to the subject and then mak[ing the] decision as to what the subject is worth based on
these current sales." Unfortunately, Gholson did not have comparable sales between willing
buyers and willing sellers of easements on narrow strips of land,(2) so he based comparable sales
on "3.2 acres with typical utility in the marketplace." He stated that the parent tract has access to
water and electricity on State Highway 123. At its closest point, the easement is approximately
3900 feet from that highway.

 Gholson presented evidence of two sales. The first involved a tract in a commercial
area, which was 418 feet deep with 208 feet of frontage on State Highway 123. The second sale
involved a 1.08-acre tract in a residential subdivision, which was 144 feet by 302 feet, fronting
on a county road. Gholson stated that public water and electricity were available to both tracts and
both were served by a septic system.

 The Authority first asserts that Gholson's testimony was not reliable because
"valuing the 30 ft. by 4,600 ft. easement not as it existed on the ground but instead as a
hypothetical rectangular tract . . . was not a methodology recognized in the appraisal discipline." 
Second, the Authority contends that the expert evidence was "based on an assumption materially
different from the undisputed facts" in that Gholson appraised a hypothetical 200-foot by 690-foot
easement that adjoined a highway rather than a 30-foot by 4,600-foot easement that was 3,900 feet
from the road. The Authority maintains that it discredited Gholson's methodology with its own
expert, Albert Menn, who presented the only evidence based on a reliable methodology.

 Menn testified that comparing an easement that is not a usable tract with sales of
two tracts that are usable is improper. He stated that, in his opinion, an appraiser should "look
at the whole property; you look at the 272 acres, you take a portion or pro rata part of that, and
that's the way you go about valuing the property." He explained that in comparing the entire
property, an appraiser should find similar tracts of land--for example, economic units that are
usable--for comparison. By this method, Menn sought to compare sales of large tracts, such as
275 to 300 acres, with the easement being taken.

 The question presented to us is whether Gholson established that his method of
determining the fair market value of the easement by comparing small-acreage sales of rectangular,
usable tracts is reliable. The Authority argues that Gholson's asserted use of the sales-comparison
approach does not establish reliability and that a fact "is not so simply because 'an expert says it
is so.'" See Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 712 (Tex. 1997).


 A. Comparable Sales

 Texas courts have long preferred comparable sales data to establish the market value
of condemned land. See Bauer v. Lavaca-Navidad River Auth., 704 S.W.2d 107, 110 (Tex.
App.--Corpus Christi 1985, writ ref'd n.r.e.); Southwestern Bell Tel. Co. v. Ramsey, 542 S.W.2d
466, 474 (Tex. Civ. App.--Tyler 1976, writ ref'd n.r.e.); City of Dallas v. McLemee, 378 S.W.2d
393, 394-95 (Tex. Civ. App.--Dallas 1964, no writ); County of Bexar v. Cooper, 351 S.W.2d
956, 958 (Tex. Civ. App.--San Antonio 1961, no writ). As the trial court instructed the jury in
the court's charge:


'MARKET VALUE' means the price which the property which is the subject of
these proceedings would bring when offered for sale by one who desires to sell, but
is not obliged to sell, and bought by one who desires to buy, but is under no
necessity of buying, taking into consideration all of the uses to which it is
reasonably adaptable and for which it either is or in all reasonable probability will
become available within the reasonable future.



See State v. Windham, 837 S.W.2d 73, 77 (Tex. 1992) (quoting State v. Carpenter, 89 S.W.2d
194, 202 (Tex. 1936)). The best evidence of market value of condemned land is the proof of sales
of land near the land in question. Bauer, 704 S.W.2d at 110. In fact, comparable sales of land
in the same area as the condemned land are considered more reliable than the unsubstantiated
opinions of experts. Id.; see also Cooper, 351 S.W.2d at 958.

 Gholson explained the comparable sales approach and the specific sales he used to
value the property in question. Gholson's methodology constituted a quantifiable process giving
rise to his conclusion. In a similar situation, such methodology was held to be reliable and
competent. See Sharboneau, 1 S.W.3d at 288. Further, Kraft brought to the attention of the trial
court relevant sections of a well-known condemnation treatise. See 2 Madison Rayburn, Rayburn
on Condemnation §§ 16.00-.35, 17.06 (21st ed. 1998). That treatise advises attorneys that "[o]ne
of the most often used and effective types of evidence in condemnation cases is . . . what the
market sales reveal as to how high or how low similar and comparable property to that in question
has actually sold for in the market . . . ." Id. § 16.03. During voir dire, Kraft enunciated
Rayburn's rule that if "reasonable minds may differ as to the existence of comparability or
similarity, 'objections go to the weight rather than to the admissibility of the evidence.'" See id.
§ 17.06 (quoting State v. Morse, 342 S.W.2d 165, 167 (Tex. Civ. App.--Dallas 1960, writ ref'd
n.r.e.)).

 The Authority asserts that its expert's testimony provided the only reliable
methodology as a matter of law: taking a pro-rata portion of the value of the entire tract to
determine the value of the easement. Kraft counters that the Authority's approach is based on the
average-value methodology that "has never received the blessing of Texas case law." Kraft cites
Roberts v. State, 754 S.W.2d 477 (Tex. App.--San Antonio 1988, writ denied), in which the court
held that reliance on that theory was reversible error. Id. at 481.

 Kraft claims the average-value methodology is always inadmissible. However, it
is only inadmissible in specific situations, and not on these facts. See State v. ADSS Props., Inc.,
878 S.W.2d 607, 615 (Tex. App.--San Antonio 1994, writ denied). Improper averaging occurs
when there are at least two economic units (the condemned land and the remaining land), each
with significantly different per-unit values, and the valuation estimates derived by the appraiser
involved mixing, or "averaging," lower-value land with higher-value land to arrive at adequate
compensation. Id. "The supreme court expressly disapproved of valuation witnesses using the
average per-unit value of a larger tract to value the part taken when it is undisputed that 'at the
time of taking' the parcel condemned has a higher unit value than the remainder tract." Id. 
(quoting State v. Meyer, 403 S.W.2d 366, 375 (Tex. 1966)).

 Here, there was no allegation that the condemned portion was worth more than the
remaining tract. Rather, the Authority's expert testified that the easement was not an economic
unit. Where the part taken is not a self-sufficient economic unit, independent of the remainder of
the parent tract, its value may be ascertained by evaluating it as a proportionate part of the whole. 
City of Tyler v. Brogan, 437 S.W.2d 609, 613 (Tex. Civ. App.--Tyler 1969, no writ). The
methodology employed by the Authority's expert was not erroneous as Kraft suggests.

 This does not mean, however, that the Authority's approach was the only proper
means of valuation. In Windham, the experts offered conflicting methods for valuing the
condemned land. Windham, 837 S.W.2d at 75-76. The State's experts used sales comparable to
the entire tract of land while the landowner relied on sales comparable to the small-acre tract
actually condemned. The court held that the jury was permitted to consider both methodologies. 
Id. at 77; see also Ramsey, 542 S.W.2d at 471. Here, then, the trial court properly allowed the
jury to hear the two experts' conflicting theories. We hold that the trial court did not abuse its
discretion in admitting Gholson's testimony.


 B. Materially Different Facts

 The Authority next contends that Gholson's testimony is unreliable on its face
because it compares a narrow, unusable tract with two rectangular, usable tracts. The Authority
points to cases holding that assumed facts that vary materially from the actual, undisputed facts
are without probative value and are by definition unreliable. See Burroughs Wellcome Co. v.
Crye, 907 S.W.2d 497, 499 (Tex. 1995); Texas Indus., Inc. v. Vaughan, 919 S.W.2d 798, 802
(Tex. App.--Houston [14th Dist.] 1996, writ denied). In Windham, the supreme court addressed
a case in which the State had condemned 2.12 acres, that "could not be considered a self-sufficient
economic unit," from a nineteen-acre tract. Windham, 837 S.W.2d at 74. The landowner added
1.64 acres to the configuration in order to create an economic unit that could be valued by the
jury. The question in Windham was whether the trial court could exclude the State's testimony
that the entire nineteen acres formed the appropriate economic unit, rather than the 3.84-acre tract
designated by the landowner.(3) The court held that the trier of fact should be able to consider all
competing evidence of valuation supported by otherwise admissible expert testimony. Id. at 78. 
In so holding, the court said that the landowner may not unilaterally designate the economic unit
for valuation without giving the condemnor the opportunity to controvert that designation. Id. at
76.

 Here, the Authority seeks to exclude the landowner's method for designating the
economic unit because the sales used by Gholson are not comparable. During voir dire, Gholson
explained that the Authority "determined both the location and the configuration of the part taken,
so essentially took what could be considered the prime portion of the subject tract." Similarly in
Windham, the landowner contended that the acreage taken by the State "was configured in such
a manner that it could not be considered a self-sufficient economic unit . . . ." Id. at 74. In that
case, the landowner reconfigured the size of the property by adding acreage to make it an
economic unit. Here, Kraft reconfigured the shape of the property to make it an economic unit. 
Even if we disagree with Kraft's reconfiguration, its admissibility is subject to the broad discretion
of the trial court. See Sharboneau, 1 S.W.3d at 285. For the trial court to permit the
reconfiguration, especially in light of Windham, was not an abuse of discretion.

 Admissibility of specific comparable sales is also subject to the trial court's
discretion. Ramsey, 542 S.W.2d at 476.


There can be no absolute formula or definition of what constitutes similar or like
property. Certainly, comparable does not mean identical. The determination will
vary with each particular fact situation. Such elements as nearness in time,
location, character, situation, usability and improvement may be considered as
shedding light on the value of the land in question. Manifestly, the trial judge in
applying so vague a standard must be granted a wide discretion, and his action will
not be overturned unless an abuse of discretion is shown.



Id. (citations omitted); accord McFaddin v. State, 373 S.W.2d 259, 262 (Tex. Civ.
App.--Beaumont 1963, writ ref'd n.r.e.) ("[T]o render testimony of sales of other property
admissible in evidence[] is not predetermined by any inflexible, hard and fast general rule, but
must rest largely in the discretion of the judge, and the rules vary with the facts of the cases."
(quoting Broesche v. State, 348 S.W.2d 770, 773 (Tex. Civ. App.--Houston 1961, no writ))). 
Allowing Gholson to testify about the two sales of small, rectangular tracts was not an abuse of
discretion.

 We follow Windham's reasoning that if one party is permitted to present evidence
of market value, then the other should be allowed to present evidence based on its competing
theory. See Windham, 837 S.W.2d at 77. Even though the comparable sales are allegedly based
on the wrong assumptions and "are not truly comparable," "[t]he perceived flaws in the testimony
of [the] experts are matters properly to be tested in the crucible of adversarial proceedings; they
are not the basis for truncating that process." United States v. 14.38 Acres of Land, 80 F.3d 1074,
1079 (5th Cir. 1996) (holding that expert testimony was reliable). We hold, therefore, that the
trial court properly allowed Gholson to testify.

 This result does not contradict the trial court's role as gatekeeper in excluding an
expert's unreliable testimony. An expert witness, qualified by knowledge, skill, experience,
training, or education, may assist the trier of fact in understanding the evidence or determining
a fact in issue. Tex. R. Evid. 702. Our state supreme court followed the United States Supreme
Court's reasoning in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), in
holding that Texas Rule of Evidence 702 requires the proponent of expert testimony to show that
the testimony is based upon a reliable foundation. Robinson, 923 S.W.2d at 556.

 Three years after Daubert was decided, the Court of Appeals for the Fifth Circuit
considered whether a district court properly excluded condemnation expert testimony on the
grounds that it was "so lacking in reliability that it should be excluded from evidence." 14.38
Acres of Land, 80 F.3d at 1077. In that case, the United States condemned land to build a new
levee to control flooding. Evidence proffered by the landowner's experts to establish market value
showed that the property was likely to flood given that the remainder was on the unprotected side
of the levee. The district court excluded the experts' opinions, citing Daubert, because they were
speculative and not based on reliable foundations.

 The court of appeals vacated the district court's judgment, stating that the district
court was too stringent in applying the Daubert reliability test. Id. at 1078. It explained that the
"trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system:
'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the
burden of proof are the traditional and appropriate means of attacking shaky but admissible
evidence.'" Id. (quoting Daubert, 509 U.S. at 596). The court confirmed that in determining the
admissibility of expert testimony, the district court should approach its task with proper deference
to the jury's role as the arbiter of disputes between conflicting opinions. Id. at 1077. This is
especially true in an eminent domain action, in which expert opinion testimony acquires special
significance because the sole issue is the value of condemned property. Id.


The value of property taken by the Government, which is no longer on the market,
is largely a matter of opinion. Since there are no infallible means for determining
with absolute conviction what a willing buyer would have paid a willing seller for
the condemnee's property at the time of taking, eminent domain proceedings
commonly pit the Government's valuation experts against those of the landowner. 
Thus, the exclusion of one or all of either party's proposed experts can influence
substantially the amount of compensation set by the factfinder. . . . Recognizing
the critical role of expert witnesses in these cases and the strong interest on both
sides that compensation be just, trial courts should proceed cautiously before
removing from the jury's consideration expert assessments of value which may
prove helpful.



Id. at 1077-78 (quoting United States v. 68.94 Acres of Land, More or Less, 918 F.2d 389, 393
(3rd Cir. 1990)). Juries are given considerable latitude in determining the weight of the evidence
when the question is one of value or damages--especially when they are not readily quantifiable. 
See id. As a general rule, therefore, questions relating to the bases and sources of an expert's
opinion affect the weight of the evidence rather than its admissibility and should be left for the
jury's consideration. Id. at 1077.

 We find the Fifth Circuit's reasoning persuasive in examining the reliability of
expert testimony in condemnation cases. The ultimate question in determining the value of the
property is one of proof as to market value, not abstract questions as to what may or may not be
considered by the jury in assessing damages. All Am. Pipeline Co. v. Ammerman, 814 S.W.2d
249, 252 (Tex. App.--Austin 1991, no writ).

 Because we hold that the trial court did not abuse its discretion in admitting
Gholson's testimony, we overrule the Authority's first and second issues.


II. No Evidence

 The Authority contends that the only evidence supporting the jury's verdict was
Gholson's testimony, and that "[b]ecause [Kraft] did not prove his expert evidence to be reliable,
such evidence, even though admitted, constitutes no evidence of value." In light of our ruling on
the Authority's first two complaints, we overrule the Authority's third point of error.


CONCLUSION

 The trial court did not abuse its discretion in admitting the testimony of Kraft's
appraiser to assist the jury in valuing the condemned land. Kraft established that using comparable
sales of small-acre tracts was a reliable methodology and that any discrepancy in the configuration
of the tracts goes to weight and not admissibility. For these reasons, we overrule the Authority's
points of error and affirm the judgment of the trial court.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: January 11, 2001

Publish


1. The pipeline carries water from the Guadalupe River to the City of San Marcos.
2. In the marketplace, pipeline easements are generally the subject of condemnation actions
and therefore, there are virtually no sales involving a willing seller and willing buyer on
comparable strips of land.
3. In Windham, the State did not dispute that the landowner could reconfigure the amount of
acreage taken. Rather, the State challenged the landowner's claim that the "highest and best use"
of the property was for commercial development. The State claimed the highest and best use was
for investment purposes, and for this reason, the appropriate economic unit was the entire
nineteen-acre tract. State v. Windham, 837 S.W.2d 73, 74 (Tex. 1992). For our purposes, the
parties do not dispute the highest and best use. This does not change our analysis. The proper
approach for the trial court to take is to allow the jury to hear evidence about what the parties
claim is the appropriate economic unit. See id. at 77 ("It is then for the jury to decide which
evidence to accept and which to reject in deciding the ultimate issue of market value.").


 court should approach its task with proper deference
to the jury's role as the arbiter of disputes between conflicting opinions. Id. at 1077. This is
especially true in an eminent domain action, in which expert opinion testimony acquires special
significance because the sole issue is the value of condemned property. Id.


The value of property taken by the Government, which is no longer on the market,
is largely a matter of opinion. Since there are no infallible means for determining
with absolute conviction what a willing buyer would have paid a willing seller for
the condemnee's property at the time of taking, eminent domain proceedings
commonly pit the Government's valuation experts against those of the landowner. 
Thus, the exclusion of one or all of either party's proposed experts can influence
substantially the amount of compensation set by the factfinder. . . . Recognizing
the critical role of expert witnesses in these cases and the strong interest on both
sides that compensation be just, trial courts should proceed cautiously before
removing from the jury's consideration expert assessments of value which may
prove helpful.



Id. at 1077-78 (quoting United States v. 68.94 Acres of Land, More or Less, 918 F.2d 389, 393
(3rd Cir. 1990)). Juries are given considerable latitude in determining the weight of the evidence
when the question is one of value or damages--especially when they are not readily quantifiable. 
See id. As a general rule, therefore, questions relating to the bases and sources of an expert's
opinion affect the weight of the evidence rather than its admissibility and should be left for the
jury's consideration. Id. at 1077.

 We find the Fifth Circuit's reasoning persuasive in examining the reliability of
expert testimony in condemnation cases. The ultimate question in determining the value of the
property is one of proof as to market value, not abstract questions as to what may or may not be
considered by the jury in assessing damages. All Am. Pipeline Co. v. Ammerman, 814 S.W.2d
249, 252 (Tex. App.--Austin 1991, no writ).

 Because we hold that the trial court did not abuse its discretion in admitting
Gholson's testimony, we overrule the Authority's first and second issues.


II. No Evidence

 The Authority contends that the only evidence supporting the jury's verdict was
Gholson's testimony, and that "[b]ecause [Kraft] did not prove his expert evidence to be reliable,
such evidence, even though admitted, constitutes no evidence of value." In light of our ruling on
the Authority's first two complaints, we overrule the Authority's third point of error.


CONCLUSION

 The trial court did not abuse its discretion in admitting the testimony of Kraft's
appraiser to assist the jury in valuing the condemned land. Kraft established that using comparable
sales of small-acre tracts was a reliable methodology and that any discrepancy in the configuration
of the tracts goes to weight and not admissibility. For these reasons, we overrule the Authority's
points of error and affirm the judgment of the trial court.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: January 11, 2001

Publish


1. The pipeline carries water from the Guadalupe River to the City of San Marcos.
2. In the marketplace, pipeline easements are generally the subject of condemnation actions
and therefore, there are virtually no sales involving a willing seller and willing buyer on
comparable strips of land.
3. In Windham, the State did not dispute that the landowner could reconfigure the amount of
acreage taken. Rather, the State challenged the landowner's claim that the "highest and best use"
of the property was for commercial development. The State claimed the highest and best use was
for investment purposes, and for this reason, the appropriate economic unit was the entire
nineteen-acre tract. State v. Windham, 837 S.W.2d 73, 74 (Tex. 1992). For our purposes, the
parties do not dispute the highest and best use. This does not change our analysis. The proper
approach for the trial court to take is to allow the jury to hear evidence about what the parties
claim is the appropriate economic unit. See id. at 77 ("It is then for the jury to decide which
evidence to accept and which to reject in deciding the ultimate issue of market value.").


 court should approach its task with proper deference
to the jury's role as the arbiter of disputes between conflicting opinions. Id. at 1077. This is
especially true in an eminent domain action, in which expert opinion testimony acquires special
significance because the sole issue is the value of condemned property. Id.


The value of property taken by the Government, which is no longer on the market,
is largely a matter of opinion. Since there are no infallible means for determining
with absolute conviction what a willing buyer would have paid a willing seller for
the condemnee's property at the time of taking, eminent domain proceedings
commonly pit the Government's valuation experts against those of the landowner. 
Thus, the exclusion of one or all of either party's proposed experts can influence
substantially the amount of compensation set by the factfinder. . . . Recognizing
the critical role of expert witnesses in these cases and the strong interest on both
sides that compensation be just, trial courts should proceed cautiously before
removing from the jury's consideration expert assessments of value which may
prove helpful.



Id. at 1077-78 (quoting United States v. 68.94 Acres of Land, More or Less, 918 F.2d 389, 393
(3rd Cir. 1990)). Juries are given considerable latitude in determining the weight of the evidence
when the question is one of value or damages--especially when they are not readily quantifiable. 
See id. As a general rule, therefore, questions relating to the bases and sources of an expert's
opinion affect the weight of the evidence rather than its admissibility and should be left for the
jury's consideration. Id. at 1077.

 We find the Fifth Circuit's reasoning persuasive in examining the reliability of
expert testimony in condemnation cases. The ultimate question in determining the value of the
property is one of proof as to market value, not abstract questions as to what may or may not be
considered by the jury in assessing damages. All Am. Pipeline Co. v. Ammerman, 814 S.W.2d
249, 252 (Tex. App.--Austin 1991, no writ).

 Because we hold that the trial court did not abuse its discretion in admitting
Gholson's testimony, we overrule the Authority's first and second issues.


II. No Evidence

 The Authority contends that the only evidence supporting the jury's verdict was
Gholson's testimony, and that "[b]ecause [Kraft] did not prove his expert evidence to be reliable,
such evidence, even though admitted, constitutes no evidence of value." In light of our ruling on
the Authority's first two complaints, we overrule the Authority's third point of error.