717 P.2d 936

**TCC ENTERPRISES, an Arizona partnership, Plaintiff/Appellant,**

v.

**ESTATE OF Geraldine M. ERNY, Deceased, and Lois Louise Osborn, its Personal Representative, Defendants/Appellees.**

**No. 2 CA–CIV 5535.**

Court of Appeals of Arizona, Division 2, Department B.

March 5, 1986.

Stompoly & Even, P.C. by L. Anthony Fines, Tucson, for plaintiff/appellant.

Kohn, Neff & Zirkle by Jeffrey M. Neff, Tucson, for defendants/appellees.

## OPINION

LIVERMORE, Presiding Judge.

This appeal involves the interpretation of a written lease between Geraldine M. Erny, lessor, and TCC Enterprises, lessee. The lessee has attempted to exercise a purchase option that calls for payment of "current market value." At issue is the proper method for determining that value. The trial court accepted defendant Erny's valuation. Because interpretation of a contract is a question of law, we are not bound by that finding. *Phillips v. Flowing Wells Unified School Dist.*, 137 Ariz. 192, 669 P.2d 969 (App.1983). We reverse.

In 1977, Erny entered into a ten-year lease of commercial property located on North Stone Avenue in Tucson. Through a series of transactions, plaintiff TCC came into possession as lessee, and the lease term was extended to February 8, 2002. The lease contained an option to purchase exercisable upon Erny's death, the purchase price to be formulated by an "M.A.I. appraiser" in accord with the following provision:

> The appraiser to be selected [by mutual consent of the parties] shall disregard the value of said property as of the date of the signing of this lease and ascertain its value as of the date of the option mentioned in this paragraph is exercised. From said appraisal, said appraiser shall deduct the value only for remodeling or improvements designated and approved as such, in writing by the Lessor. The said appraiser shall be given information by the personal representative as to the status of the property prior to the time the remodeling took place. The appraisal shall reflect the difference in value of the property prior to the designated and approved (in writing) remodeling and its current market value.

Erny died in October 1983 and TCC exercised its option. The appraiser estimated the market value of the subject property, "free and clear, not encumbered by a lease," at $300,000. The estate contends that this is the current value of the property and the price TCC must pay to exercise the option. The appraiser also found that the market value of that which the estate could sell, the property subject to a lease at a fixed rental extending for nineteen years, was $145,000.[1] TCC contends that this is the price it should pay.

---

1. That figure was derived from adding the present cash value of Erny's remainder at the

expiration of the lease in 2002 and of the

Erny's estate is not now in a position to sell unencumbered fee simple to the subject property, for it does not own such fee. The estate they now hold and could sell is a "leased-fee estate." Market value is determined by hypothesizing a sale; it is that price a desirous but unobligated purchaser would pay a desirous but unobligated seller after consideration of all uses to which the property is adapted and for which it is capable of being used. *Mastick v. State,* 118 Ariz. 366, 576 P.2d 1366 (1978). Until 2002 the subject property is capable of use only in accord with the lease terms; the hypothetical sale price must be adjusted accordingly. We hold that the current market value of the lessor's interest in leased property is the value a purchaser would pay for what the owner-lessor has to sell, the fee subject to the lease.[2]

Erny's personal representative argues that this result is foreclosed by the option provision instructing the appraiser to "deduct the value only for remodeling and improvements" made by lessee. We believe defendant misconstrues this provision. The purpose of the quoted language is to permit lessee to exercise its option without paying twice for the same improvements. The appraisal is to be premised upon the status of the property prior to the remodeling; the lessor may not claim an increase in leased-fee value due to an inflated reversionary interest attributable to the improvements. Indeed, this provision supports TCC's position. It indicates an intent of the parties that the lessee not pay for something already paid for. If TCC is required to pay Erny $300,000, it would pay $155,000 for something it already owned, the lease to the year 2002.

The trial court's ruling is reversed and specific performance of the option agreement, in accord with the lease and this opinion, is ordered. Appellant's attorney's

present cash value of the lease payments for the nineteen years yet to run on the lease.

2. This result could also be reached by looking to the customs in M.A.I. appraising. Expert testimony at trial and other authorities attest that, absent instructions to the contrary, appraisals

fees on appeal will be granted in an amount to be determined after the filing of its statement of costs.

BIRDSALL and LACAGNINA, JJ., concur.

reflect the value of that which can be sold. The effect of a lease is considered. See, e.g., American Institute of Real Estate Appraisers, Professional Ethics and Standards, S.R. 1.4(e), (1985); M. Friedman, Leases § 15.101 (2d ed. 1983 & Supp.1985).