**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-11375

PETULA ASSOCIATES, LTD.,

Plaintiff-Counter Defendant-Appellant-Cross Appellee,

VERSUS

DOLCO PACKAGING CORPORATION,

Defendant-Counter Claimant-Appellee-Cross Appellant.

Appeals from the United States District Court
for the Northern District of Texas, Dallas Division

February 12, 2001

Before DAVIS and EMILIO M. GARZA, Circuit Judges, and POGUE, Judge[*].

POGUE, Judge:

Petula Associates, Ltd. ("Petula") appeals the district court's grant of final judgment and its grants of summary judgment in favor of Dolco Packaging Corporation ("Dolco"). Petula had filed suit in Texas state court, whereupon Dolco removed the case to the United States District Court for the Northern District of Texas, Dallas Division, asserting diversity jurisdiction pursuant

---

[*]      Judge of the U.S. Court of International Trade, sitting by designation.

to 28 U.S.C. §§ 1332, 1441.  The district court heard motions on summary judgment from both parties, and ruled in favor of Dolco in two separate opinions and orders dated February 23, 1998, and March 30, 1999.  The district court entered its final judgment on December 3, 1999, following which Petula filed a timely notice of appeal to this Court.  Dolco cross-appeals one of the district court's rulings.  For the reasons discussed below, the Court REVERSES-IN-PART and AFFIRMS-IN-PART, and VACATES the district court's award to Dolco of an equitable accounting and attorneys' fees, WITHOUT PREJUDICE as to the attorneys' fees.  Dolco's cross-appeal is DISMISSED AS MOOT.  This case is REMANDED for judgment consistent with this opinion.

### Factual Background

This suit arose from a dispute regarding a purchase option contained in a lease agreement ("the lease") on a property located in Dallas, Texas ("the property").  In December, 1985, Petula leased a commercial building to Dolco for a fifteen-year term.  The lease was amended twice.  The lease provided both a renewal and a purchase option for Dolco.  In Paragraph 43 of the lease, Dolco was afforded the opportunity to purchase the property for the set price of $4,833,128.16, plus costs, during the first five years of the lease, or for the "fair market value" during the next five years of the lease.  In November, 1990, however, the purchase option and rental payment provisions of the lease were altered due to Dolco's

reorganization.  While the period for purchasing the property at the set price was re-started (it now expired at 12:00 a.m. on August 1, 1996), the "fair market value" option period was shortened from five years to five days after the first option expired.  Further, Dolco's rental payments were graduated, so that Dolco would pay reduced rents in the first five years of the amended lease, with the reduction to be made up by increased rents thereafter.

According to both the original and the amended lease, the "fair market value" of the property was to be determined in accordance with the valuation procedure outlined in Paragraph 28 of the lease.  Pursuant to Paragraph 28, the parties were first required to attempt to reach agreement on the "fair market value" of the property.  If those negotiations failed, the parties were each required to select an appraiser to value the property; the average of the appraisers' estimates would constitute the "fair market value" of the property.  If, however, the appraisers' valuations differed by more than ten percent, the appraisers were to select a third appraiser to value the property.

In accordance with the lease purchase provision, Dolco informed Petula on August 1, 1996, of its intent to exercise its option to purchase the property for "fair market value."  The parties were, however, unsuccessful in their attempt to reach an agreement regarding the "fair market value" of the property.  As a consequence, each party hired an appraiser to value the premises.

Dolco's appraiser determined that the property should be valued without regard to the lease, and therefore valued the property at $2.75 million. Petula's appraiser determined that the term "fair market value" should include the value of the lease, and therefore appraised the property at $5.15 million. Because of the divergence in the appraiser's valuations, a third appraiser was selected. The third appraiser, however, recused himself before valuing the property.

After the third appraiser withdrew, Petula refused to allow another appraiser to be appointed, and instead filed a declaratory judgment action in Texas state court. Dolco removed the case to federal district court, and requested summary judgment. The questions before the court were whether Dolco caused the third appraiser to withdraw, and whether the lease should be considered in determining the "fair market value" of the property. The district court held that Dolco's actions with regard to the appraiser did not constitute a breach of the lease, and thus that Dolco was entitled to specific performance of the lease.[1] In addition, the district court ordered that another appraiser be appointed, and that the factors in Paragraph 28 controlled whether the lease should be considered in determining the fair market value of the property. Because the lease was not listed as a factor in Paragraph 28, the court determined that the lease should not be included in the valuation. On June 18, 1998, a new appraiser

---

[1] Neither party appeals this aspect of the district court's decision.

determined that the property was worth $3 million,[2] and thereafter Dolco requested a closing date.

Prior to the proposed closing date, Dolco informed Petula that the lease required Petula to provide a warranty deed free of liens or encumbrances at closing. Petula, however, argued that pursuant to Paragraph 43(D) of the lease, it could tender the property subject to its first lien mortgage of $3.8 million. Thereupon Dolco filed a summary judgment motion arguing that Petula could not encumber the property, and that Dolco should receive an equitable accounting and attorneys' fees. Petula filed a cross-motion for summary judgment arguing that Paragraph 43(D) allowed the property to be encumbered by the lien, and that because of the non-recourse provision in the lease, Dolco was not entitled to an equitable accounting or attorneys' fees.

The district court held that Petula's interpretation of Paragraph 43(D) was incorrect, and that Petula could not transfer the property subject to the lien because Petula did not have positive equity in the property. Further, the district court granted Dolco's request for attorneys' fees because the court found that Paragraph 38 of the lease contemplated the assessment of attorneys' fees. The court also granted Dolco's request for an equitable accounting for the rents paid by Dolco from July 18, 1998, forward. Although Dolco had requested an accounting from

---

[2] Although Petula complied with the court's orders to proceed with appraisal of the property, it reserved the right to appeal the lower court's determinations.

December 1, 1996, or one month after the original third appraiser resigned, the court determined that July 18, 1998, was the appropriate date, because that was date on which the closing should have occurred following the June 18, 1998, appraisal.

Petula appeals three of the district court's holdings: first, that the lease should not be considered in determining the "fair market value" of the property; second, that Petula may not transfer the property to Dolco subject to the existing first lien mortgage; and third, that Petula may be held liable to Dolco for an equitable accounting and attorneys' fees. Dolco appeals the district court's decision to start the equitable accounting period on July 18, 1998, rather than on December 1, 1996, as Dolco had requested.

## Standard of Review

This suit involves the interpretation of terms included in the lease. Because the suit was brought under diversity jurisdiction, the district court applied Texas law regarding contract interpretation. Under Texas law, summary judgment may be granted if the terms of a contract are not ambiguous, such that they "can be given a certain or definite legal meaning or interpretation." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). In the present case, the district court concluded, and the parties did not dispute, that the provisions of the lease are unambiguous. The district court then granted summary judgment in favor of Dolco regarding the interpretations of the phrase "fair market value,"

the provisions governing how the purchase price for the property should be paid, and the provisions limiting Petula's personal liability under the lease. We review the district court's conclusions *de novo*. *See EEOC v. Boeing Services Int'l*, 968 F.2d 549, 553 (5th Cir. 1992).

## Discussion

### I.    Fair Market Value

Paragraph 28 of the lease provides in relevant part:

> In determining the "prevailing fair market rate" or "fair market value" for the purposes of a provision in the lease, such rate or value shall be the rate or value, as the case may be, which Landlord and Tenant shall mutually agree upon, considering like premises in the Dallas, Texas area, of the same quality and age of the building and also considering the length of the renewal term then under consideration (as to fair market rate), and the quality, utility and location of the space involved.

Texas courts have consistently defined "fair market value" broadly to mean the price a piece of property would receive on the open market if the seller and buyer were not compelled to enter into the transaction. *See State v. Windham*, 837 S.W.2d 73, 77 (Tex. 1992)(quoting *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 202 (Tex. 1936))(fair market value is "'the price which the property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying it'"). Consequently, when the term "fair market value" is used in a contract governed by Texas law, it may be presumed that the parties intended the term to be understood

according to this meaning, absent a clear indication to the contrary. *See* RESTATEMENT (SECOND) OF CONTRACTS § 202 (3)(a) (1981). As such, we agree with the district court that the term "fair market value" is not ambiguous.

If Texas's definition of "fair market value" is applied, the value of the lease should be considered. For example, in *TCC Enters. v. Estate of Erny*, 149 Ariz. 257, 717 P.2d 936 (Ariz. Ct. App. 1986), the Arizona Court of Appeals applied an identical definition of "fair market value"[3] in valuing a leased property sold by the lessor to the lessee pursuant to a purchase option. The court concluded that, because a buyer on the open market would purchase the property as a leased-fee estate, the lease would affect the value of the property, and therefore must be considered in the property's valuation. *See TCC*, 149 Ariz. at 258, 717 P.2d at 937. Here, on August 1, 1996, what Petula had to sell was an estate subject to a lease.[4] In *TCC*, the effect of including the value of the lease was to decrease the fair market value of the property; in this instance, because of the graduated rent schedule,

---

[3] The lease in that case used the term "current market value," and the court refers to, simply, "market value." *See TCC*, 149 Ariz. at 258, 717 P.2d at 937 ("Market value is determined by hypothesizing a sale; it is that price a desirous but unobligated purchaser would pay a desirous but unobligated seller after consideration of all uses to which the property is adapted and for which it is capable of being used.").

[4] Because Texas law defines "fair market value" with reference to an unobligated seller and an unobligated buyer, we must disregard the obligations placed on Petula and Dolco by the purchase option contained in the lease.

the effect of including the lease is to increase the fair market value of the property. Nonetheless, fair market value must reflect the value of that which can be sold.

The district court decided, however, that, because Paragraph 28 "requires the parties and/or appraisers to specifically consider the . . . enumerated factors when determining the fair market value for the property . . . the phrase 'fair market value' has a unique meaning with respect to the [l]ease." Mem. Opinion and Order (Feb. 23, 1998), at 15. We disagree. Paragraph 28 does not contain specific language indicating that it is an exclusive list of the factors to be relied upon in determining fair market value; rather, the parties are to "consider" the factors listed. The language of Paragraph 28 does not compel the parties to refrain from considering other factors. Moreover, Paragraph 28 states that parties should consider the value of "like premises" in determining fair market value. Under the analysis above, "like premises" means a property subject to a lease; thus, the lease should be included. Finally, the parties failed to include the lease in the list of items that are explicitly excluded from the fair market value calculation, given that the items "have been or will be paid" by Dolco.[5] Absent explicit language indicating that the lease should

---

[5] In *TCC*, the lessor pointed to similar language in the lease that excluded the value of remodeling and improvements from the fair market value of the property. The lessor argued there that, because the lease allowed only these deductions, a deduction for the lease could not be made in calculating the fair market value. The court disagreed, explaining that the language "indicates an intent of the parties that the lessee not pay for something already paid for. If TCC is required to pay Erny [for

or should not be included in determining fair market value, the district court erred in deviating from the definite and fixed meaning given to the term "fair market value" in Texas contract law, which would include the value of the lease.[6]

## II.  Transfer Subject to the First Lien Mortgage

Paragraph 43(D) of the lease provides in relevant part:

> At [Petula's] option, the purchase price shall be payable either all in cash at closing or by [Dolco] accepting title to the premises subject to any then existing first lien mortgage indebtedness and paying the balance of the purchase price to [Petula] in cash.

The issue is whether Paragraph 43(D) allows Petula to require Dolco to accept Petula's first lien mortgage debt of $3.8 million, even if the debt amount exceeds fair market value (*i.e.*, purchase price).  Given our decision that the value of the lease should be included in the determination of fair market value, and that the appraiser who included the value of the lease appraised the property at $5.15 million, it appears unlikely that the fair market value of the property will be less than the $3.8 million first lien mortgage debt.  Nonetheless, we address the question in the event

_____

the fee not subject to the lease], it would pay [extra] for something it already owned, the lease to the year 2002."  *See TCC* at 149 Ariz. 258, 717 P.2d at 937.  Here, application of the same principle has a different result because of the facts of the case. If the value of the lease is not included, Dolco would pay less for what it owns than what it agreed to pay in the form of increased rents during the later years of the lease.

[6]     Indeed, appraisal industry standards indicate that the effect of a lease must be considered.  *See* APPRAISAL STANDARDS BOARD, UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE, S.R. 1-2(c) (1996).

that the fair market value is in fact determined to be less than $3.8 million.

The district court held that, "the language contained in Paragraph 43(D) . . . is only available to [Petula] if there is a [sic] positive equity in the building." Mem. Opinion and Order (Mar. 31, 1999), at 8. The court noted that it was required to enforce the contract as written, and therefore it could not enlarge the payment provision to afford Petula an unlimited right to transfer its mortgage debt. *See Hubler v. Oshman*, 700 S.W.2d 694, 699 (Tex. App. Corpus Christi 1985)(stating that a "court has no power to decree specific performance in any manner except in keeping with the terms of the agreement made by the parties").

We agree with the district court. Courts "must enforce the unambiguous language in a contract as written, and the applicable standard is 'the objective intent' evidenced by the language used, rather than the subjective intent of the parties." *Clardy Mfg. Co. v. Marine Midland Bus. Loans*, 88 F.3d 347, 352 (5th Cir. 1996)(quoting *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981)). The language in Paragraph 43(D) is not ambiguous; it allows Dolco to pay all in cash, or to accept transfer of mortgage debt and pay the remainder of the purchase price in cash. The language chosen by the parties indicates that they intended to allow Petula to transfer mortgage debt only if the debt does not exceed the purchase price. Petula would interpret Paragraph 34(D) to allow it an unfettered ability to transfer

mortgage debt; the language of the provision does not, however, support such a broad reading.

## III. Equitable Accounting and Attorneys' Fees

The district court awarded Dolco an equitable accounting and attorneys' fees because of Petula's failure to close at the purchase price of $3 million established by the June 18, 1998, appraisal. As a consequence of our decision above that the fair market value must include the value of the lease, the June 18, 1998, appraisal of the "then fair market value" for purposes of Dolco's exercise of its purchase option pursuant to Paragraph 43(A)(ii) was incorrect as a matter of law. Therefore, the July 18, 1998, "latest closing date" required by Paragraph 43(D), on which the district court based its award of an equitable accounting, was ineffective as a means of placing Petula in default. Because Paragraph 18(K) of the lease gives Dolco an "exclusive remedy . . . for damages" "[i]n the event of any default by [Petula]," lacking any default on the part of Petula, Dolco has no right to damages. Further, Paragraph 38 of the lease allows Dolco to recover attorneys' fees only if it is "the prevailing party." Dolco has failed to prevail on its claim that fair market value was correctly determined by not considering the value of the lease. Dolco has, however, prevailed on its claim that Petula was not allowed under the lease to attempt to transfer the property subject to the first mortgage lien, where the value of the mortgage

exceeded the equity in the property. Accordingly, we vacate the district court's award to Dolco of an equitable accounting and attorneys' fees, without prejudice to the district court's ability on remand to reinstate a portion of the award for attorneys' fees related solely to the cost of litigating the first lien mortgage issue.[7]

## Conclusion

The district court's ruling that fair market value need not include the value of the lease is REVERSED. The district court's ruling that Petula may not transfer the property subject to the first lien mortgage unless the equity in the property exceeds the value of the mortgage is AFFIRMED. The district court's award to Dolco of an equitable accounting and attorney's fees is VACATED, WITHOUT PREJUDICE as to the attorneys' fees. Dolco's cross-appeal is DISMISSED AS MOOT. This case is REMANDED for judgment consistent with this opinion.

---

[7] Although the fair market value including the lease will likely exceed the $3.8 million mortgage, we note that we disagree with the district court that attorneys' fees may exceed Petula's equity in the property. Paragraph 38 provides Dolco with a right to seek attorneys' fees; Paragraph 18(K) governs how such judgments against Petula may be satisfied, and states explicitly that, "*Notwithstanding any other provision hereof*, [Petula] shall not have any personal liability hereunder." (Emphasis added.) Thus, to the extent that an award of attorneys' fees exceeds Petula's equity in the property, such amount is disallowed by the plain language of Paragraph 18(K).