United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 7, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-10740

_____

PETULA ASSOCIATES, LTD.,

Plaintiff-Counter Defendant-Appellee

v.

DOLCO PACKAGING CORPORATION,
Tekni-Plex, Inc., successor by merger

Defendant-Counter Claimant-Appellant

_____

Appeal from the United States District Court

for the Northern District of Texas

(3:96-CV-3216-P)

_____

Before JONES and  BENAVIDES, Circuit Judges, and KAZEN, Chief District Judge.[1]

KAZEN, Chief District Judge:*

---

[1] Chief Judge of the Southern District of Texas, sitting by designation.
* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

This appeal is a sequel to our decision in *Petula Associates, Ltd. v. Dolco Packaging Corp.*, 240 F.3d 499 (5th Cir. 2001) ("Petula I").  The prior opinion recites all the pertinent facts as they existed at that time.  In essence, on August 1, 1996, Dolco exercised an option to purchase property which it was leasing from Petula.  This action triggered arguments about several closing details, primarily centered on the question of how to calculate the "fair market value" of the property.  Petula claimed that the value of the existing lease should be included in the appraisal; Dolco disagreed.  Litigation ensued, and the district court ruled in Dolco's favor, holding that the lease should not be included in the valuation of the property.  Based on that ruling, a new appraisal was made on June 18, 1998.  Dolco then requested a closing date for the sale.

Unfortunately, another dispute arose, as Petula argued that Paragraph 43(D) of the lease enabled it to tender the property subject to its first lien mortgage.  Both sides returned to district court on that issue.  At that time, Dolco also asked for an equitable accounting, claiming credit for rent it had paid since 1996, on the theory that Petula was at fault for delaying the closing.  The district court again ruled in favor of Dolco, holding that Petula could not transfer the property subject to the lien because it did not have positive equity in the property.  The district court granted Dolco's request for an equitable accounting for back  rent, but fixed the starting point at July 18, 1998.  The court reasoned that this date would have been the proper closing date after the appraisal of June 18, 1998, and essentially held Petula responsible only for improperly delaying that closing date.  The district court also awarded attorneys' fees to Dolco.

After this ruling, the parties pursued the appeal, which led to Petula I.  However, they also took a significant step in connection with the proposed appeal by negotiating and signing a

2

"Stipulation and Standstill Agreement," dated November 30, 1999.  The intent of the agreement was explicit:  "The parties desire to preserve their appellate rights, yet avoid disputes during and after appeal."  The agreement recited that Dolco was entitled to receive, as of that time, equitable accounting in the sum of $529,284.00.  The parties also agreed on the amount of reasonable attorneys' fees to be paid to Dolco, as ordered by the district court.  The agreement provided that, beginning December 1, 1999 and throughout the pendency of the appeal, Dolco was relieved of its obligation to pay the base monthly rent.  Further, if the judgment were not reversed, Dolco would pay to Petula at closing the purchase price minus the accounting.  The agreement then contained the following provision which is now the subject of dispute:

> "8.     If the award to Dolco for an Accounting is reversed, then Dolco will pay to Petula (in lieu of the interest described in the preceding paragraph) back base rent under the Lease from December 1, 1999 until closing of the transfer of the Property."

In Petula I, we expressly "reversed" the district court on the key valuation issue and held that the term "fair market value," contained in Paragraph 28 of the lease, would include the value of the lease agreement.  Therefore, the appraisal of June 18, 1998, which excluded the value of the lease, "was incorrect as a matter of law,"  240 F.3d at 505, and Petula could not have been in default for failing to close at that time.  This conclusion necessarily destroyed the underpinnings of the equitable accounting award.  We further concluded that Dolco obviously was no longer entitled to attorneys' fees on the valuation issue, although it did prevail on the claim that Petula could not attempt to transfer the property subject to the first mortgage lien, if the value of the mortgage exceeded the equity in the property.  We summarized our holdings as follows:

> "Accordingly, we vacate the district court's award to Dolco of an equitable accounting

3

and attorneys' fees, without prejudice to the district court's ability on remand to reinstate

a portion of the award for attorneys' fees related solely to the cost of litigating the first

lien mortgage issue." 240 F.3d at 505.

We then remanded to the district court "for judgment consistent with this opinion." *Id*.

The opinion in Petula I was filed on February 12, 2001. One would have expected that

the opinion, combined with the parties' "Standstill Agreement," would have facilitated a rapid end

to this litigation, which began in November of 1996. Unfortunately, such was not the case.

Instead, the parties resumed quarreling in district court.

This time, Dolco again sought an equitable accounting, but on different grounds. Dolco

again claimed entitlement to an offset in the purchase price for all rent it had paid under the lease

since the time it exercised the option to purchase in 1996. The new theory was that, since the

June 1998 valuation was determined in part by capitalizing the rents due under the lease, it would

be inequitable for Petula to receive the higher sale price and also keep the past paid rent. Petula

responded by invoking the Standstill Agreement. The district court held that Dolco's new

accounting theory was different from its original theory, that Texas law supports the general

proposition of equitable accounting, and that Petula I did not foreclose this new theory. The

district court further held, however, that the new dispute was squarely governed by Paragraph 8

of the Standstill Agreement, and that the parties were bound by that agreement. We agree.

Dolco argues that nothing in the Standstill Agreement constitutes a waiver of its

"substantive rights" to an equitable accounting. Underlying this argument is the rather strained

claim that Petula I did not "reverse" the prior award of an equitable accounting but only "vacated"

it. Dolco then cites cases for the proposition that a vacatur and a reversal are distinct concepts

4

for *res judicata* and collateral estoppel purposes. We do not find these authorities relevant here.

Under Texas law, a stipulation is a binding contract between the parties and the court. *See Fed. Lanes, Inc. v. City of Houston*, 905 S.W.2d 686, 689 (Tex. App. 1995); *First Nat'l Bank v. Kinabrew*, 589 S.W.2d 137, 142 (Tex. App. 1979); *Westridge Villa Apartments v. Lakewood Bank & Trust Co.*, 438 S.W.2d 891, 895 (Tex. App. 1969). Indeed, Dolco does not challenge the validity of the Standstill Agreement as such, but only its meaning. The interpretation of a written contract is controlled by the intention of the parties to it. *See Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 330 (Tex. 1984). And, "[l]anguage should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987) (citing *Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex. 1966)); *see also* Mark K. Glasser & Keith A. Rowley, *On Parol: The Construction and Interpretation of Written Agreements and the Role of Extrinsic Evidence in Contract Litigation*, 49 Baylor L. Rev. 657, 761 (1997). Furthermore, "[i]n the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex. 1968).

Language should be given its "plain grammatical meaning." In Texas, courts look to dictionaries to deduce the plain meaning of a term. *See Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999); *Boykin v. State*, 818 S.W.2d 782, 786 (Tex. Crim. App. 1991); *Morgan Bldgs. and Spas, Inc. v. Turn-Key Leasing, Ltd.*, 97 S.W.3d 871, 880 n.16 (Tex. App. 2003); *Hunter v. State*, 92 S.W.3d 596, 601-02 (Tex. App. 2002). Black's Law Dictionary defines "reversal" as "[a]n appellate court's overturning of a lower court's decision." Black's Law

Dictionary 1320 (7th ed. 1999). Similarly, Webster's defines "reversal" as "an act or the process of reversing: as . . . a change or overthrowing of some legal proceeding or judgment." Webster's Third New International Dictionary 1943 (1981).

This court in Petula I indisputably reversed the original equitable accounting when it reversed the valuation theory upon which it was based. The case was returned to the district court "without prejudice" only as to the award of attorneys' fees. This reversal triggered Paragraph 8 of the Stipulation Agreement, in which Dolco unambiguously agreed to pay Petula back rent. Dolco's argument that the Stipulation Agreement does not expressly prohibit a new and different equitable accounting theory violates the clearly expressed intent of the Agreement, namely to avoid new disputes after appeal.

The district court correctly observed that "the parties themselves altered their rights and responsibilities for the sale through the Stipulation and Standstill Agreement. Although Dolco now claims that the result of the Agreement leads to an inequitable result[2], Dolco knew or should have known the risks it took in entering into such an agreement."

The judgment is AFFIRMED.

---

[2] We do not imply that the result dictated by Paragraph 8 is necessarily inequitable. As noted by the district court, the result now sought by Dolco is basically the same prescribed in the Standstill Agreement if Petula I would have affirmed the original district court ruling. Moreover, Paragraph 8 does not require Dolco to pay any interest to Petula on the amount of the purchase price between 1996 and closing.