ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

June 5, 2008

The Honorable Kip Averitt
Chair, Committee on Natural Resources
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0634

Re: Valuation of real property surrounding Possum Kingdom Lake that the Brazos River Authority proposes to sell to the lessees of the property (RQ-0639-GA)

Dear Senator Averitt:

You ask about the valuation of real property owned by the Brazos River Authority (the "Authority") and leased to private individuals.[1] You inform us that the Authority "owns substantial property surrounding Possum Kingdom Lake, and much of that property is subject to long-term residential leases to private individuals." Request Letter, *supra* note 1, at 1. You explain that a majority of these leases "reflect a below-market rate, and many of [them] have a number [of] years remaining in their terms." *Id.* In response to legislation proposed but not enacted during the 2007 legislative session that would have required the Authority to sell the leased property to the lessees, the Authority is formulating procedures to offer to sell the property to the lessees. *Id.* You specifically ask whether the leased property "should be valued as though unencumbered by existing leases where the sale is to the lessee, or whether the sales price should be discounted to reflect the remaining term of the existing leases." *Id.* at 1–2. You also ask whether using the discounted sales price reflecting the unexpired lease term would violate article III, section 52 of the Texas Constitution. *Id.* at 2.

I.    Background

To provide a context for your questions and our subsequent discussion, we briefly review the type of real-property interests implicated here. A title in fee is the most complete form of ownership and establishes an interest in real property known as a fee simple interest. 34 TEX. JUR. 3d *Estates* § 3 (2002); THE APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE 68–69 (12th ed. 2001). The fee simple interest may be divided by a lease into the leased fee (the lessor or landlord's) interest and the leasehold (the lessee's) interest. THE APPRAISAL INSTITUTE, THE APPRAISAL OF REAL

---

[1]Letter from Honorable Kip Averitt, Chair, Committee on Natural Resources, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas, at 1–2 (Oct. 16, 2007) (on file with the Opinion Committee, *also available at* http://www.texasattorneygeneral.gov) [hereinafter Request Letter].

ESTATE 81 (12th ed. 2001). A leased fee interest generally includes the right to be paid rent for the term of the lease and the right of repossession at the end of the lease term. *Id.* "[T]he value of the leased fee interest represents the owner's interest in the property." *Id.* at 82. A leasehold interest generally includes the right to possess the property for the lease period in return for the obligation to pay rent. *Id.* at 83. Under the facts presented, the Authority holds a leased fee interest and a private lessee a leasehold interest. As particularly relevant here, "[t]he value of a leased fee interest encumbered [by] a fixed [contract] rent that is below market rates[2] may be worth less than the unencumbered fee simple interest or the leased fee interest with rent at market levels." *Id.*

Whether the property at issue should be valued as encumbered by the leases (as leased fee estates) to which the property is subject or as unencumbered (as fee simple estates) is a significant issue for the Authority and the lessees because of the particular facts. You explain that certain lessees contend that the property should be valued as encumbered by the remaining term of the lease on the property, which would result in a lower sales price in this particular instance because of the existing below-market lease rates. Request Letter, *supra* note 1, at 1.[3] The Authority, however, has been advised by its outside counsel that any sale of the leased property at a price reflecting "the existing lease would result in a windfall to the lessee" and that such a windfall is prohibited by Texas Constitution article III, section 52. *Id.*[4] This view, as we understand it, is premised in part on the application of the legal doctrine of merger[5] under which the lessee "would acquire the full fee simple interest in the property for a price discounted by a below-market lease that would cease to exist the moment the property is sold." *Id.*; *see also* Authority's Brief, *supra* note 4, at 2–3; Authority's Reply Brief, *supra* note 4, at 3, 5. The lessees contend that the merger doctrine does not or would not apply here. *See* Staley Brief, *supra* note 3, at 10–13.

---

[2]"Market rent" is "[t]he rental income that a property would probably command in the open market; indicated by the current rents that are either paid or asked for comparable space as of the date of the appraisal." THE APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE 83 (12th ed. 2001). In contrast, the "contract rent" is "[t]he actual rental income specified in a lease." *Id.*

[3]*See also* Letter Brief of Concerned Lessees of Possum Kingdom Lake, from James D. Shields, Rebecca C. Lucas, Mark Lane, and Jim Handy, to Honorable Greg Abbott, Attorney General of Texas (Dec. 14, 2007) (on file with the Opinion Committee) [hereinafter Lessees' Brief]; Letter Brief of Possum Kingdom Lake Ass'n and Possum Kingdom Lake Preservation Ass'n, from Law Offices of Joe H. Staley, Jr., P.C., to Opinion Committee, Attorney General of Texas (Dec. 12, 2007) (on file with the Opinion Committee) [hereinafter Staley Brief].

[4]*See also* Opinion Letter Regarding Sales of Property to Lessees at Possum Kingdom Lake, from Jennifer Knauth, Scott, Douglass & McConnico, L.L.P., to Mr. Steve Peña, Presiding Officer, Board of Directors, Brazos River Authority, at 2–3 (Aug. 16, 2007), attached to Request Letter [hereinafter Authority's Brief]; Letter Brief from Jennifer Knauth, Scott, Douglass & McConnico, L.L.P., to Honorable Greg Abbott, Attorney General of Texas, at 3 (Jan. 24, 2008) (on file with the Opinion Committee) [hereinafter Authority's Reply Brief].

[5]"Merger of estates is the absorption of a lesser estate in land into the greater; however, application of this doctrine is disfavored in Texas." *Steger v. Muenster Drilling Co., Inc.*, 134 S.W.3d 359, 376 (Tex. App.—Fort Worth 2003, pet. denied) (footnotes deleted). Whether a merger of two estates—such as the leased and leasehold interests here—is intended, is a question of fact determined by looking at the estate owner's—here the lessees'—intentions and all the related circumstances. *Id.* "Equity will not, however, decree a merger of estates when it would be disadvantageous to the person acquiring both interests." *Id.*

## II.      Analysis

### A.      Statutory Authority

We begin by considering the Authority's statutory power to sell the leased property. The Authority is a special law conservation and reclamation district established pursuant to article XVI, section 59 of the Texas Constitution. *See* TEX. CONST. art. XVI, § 59(b); TEX. SPEC. DIST. CODE ANN. § 8502.001(a)–(b) (Vernon 2007). The Authority is governed by its special enabling legislation and by certain general laws applicable to water districts, including chapter 49 of the Water Code. *See* Tex. Att'y Gen. Op. No. GA-0599 (2008) at 2–3. We understand that the Authority proposes to sell the leased properties to the lessees in private sales pursuant to section 49.226(a) of the Texas Water Code.[6] *See* Authority's Brief, *supra* note 4, at 2–3. Section 49.226(a) generally requires a water district to exchange real or personal property "for like fair market value":

> Any personal property valued at more than $300 or *any land or interest in land* owned by the district which is *found by the board to be surplus* and is not needed by the district may *be sold* under order of the board *either by public or private sale*, or the land, interest in land, *or* personal property *may be exchanged for other land*, interest in land, or personal property needed by the district. Except as provided in Subsection (b) [abandonment or release of property not acquired with district funds], *land, interest in land,* or personal property *must be exchanged for like fair market value, which value may be determined by the district*. In connection with the sale of surplus land, the board, at its discretion, may impose restrictions on the development and use of the land.

TEX. WATER CODE ANN. § 49.226(a) (Vernon 2008) (emphasis added); *see also* Tex. Att'y Gen. Op. Nos. GA-0371 (2005) at 3 ("Section 49.226(a) expressly authorizes a district to sell surplus land by public or private sale."); DM-441 (1997) at 4–5 ("fair market value is generally understood to mean a fixed, ascertainable sum").

By its terms, section 49.226(a) authorizes a district's board of directors to determine the fair market value of land or an interest in land to be exchanged: "land [or] interest in land . . . must be exchanged for like fair market value, which value may be determined by the district." TEX. WATER CODE ANN. § 49.226(a) (Vernon 2008). While by its literal terms this provision regarding fair

---

[6]You do not ask and we do not determine whether Water Code section 49.226 is in all respects consistent with the Authority's enabling legislation. *See* TEX. WATER CODE ANN. § 49.002(a) (Vernon 2008) (providing that chapter 49 applies to special law districts such as the Authority to the extent that its provisions do not directly conflict with the district's enabling legislation); *see also, e.g.*, TEX. SPEC. DIST. CODE ANN. §§ 8502.013(b) (Vernon 2007) (authorizing the sale of property for cash "if the board by *affirmative vote of 11 of its members* determines that the property or interest is not necessary to the business of the Authority and approves the terms of the sale") (emphasis added); 8502.009(a) (providing that the Authority's board consists of twenty-one members).

market value applies to an exchange[7] of real property, the Authority and the lessees assume that it also applies or would effectively apply as a matter of practice to the proposed sale of real property here. *See* Authority's Brief, *supra* note 4, at 2–3 (suggesting that statutory fair market value requirement applies to sale of property); Authority's Reply Brief, *supra* note 4, at 4 (stating that the statute requires the Authority to receive fair market value for property sold); Lessees' Brief, *supra* note 3, at 2 (suggesting that appraisal practices require valuing the property to be sold at its fair market value); Staley Brief, *supra* note 3, at 3 ("It is not disputed that the Texas Water Code . . . requires the [Authority to] receive fair market value . . . for any 'interest in land' that it sells.") (footnote omitted). *But see* TEX. SPEC. DIST. CODE ANN. §§ 8502.012(f) (Vernon 2007) (permitting the Authority to sell property "on terms and conditions . . . or sale prices, on which the parties agree"), 8502.013(b) (permitting the Authority to "sell for cash any property or interest if the board by affirmative vote of 11 of its members determines that the property or interest is not necessary to the business of the Authority and approves the terms of the sale"). Assuming for the purposes of this opinion that the fair market value requirement also applies or would effectively apply to the sale of property, the statute does not directly state that a water district board must or must not, in arriving at the fair market value of the land or interest in land, consider any leases on the land. *See* TEX. WATER CODE ANN. § 49.226(a) (Vernon 2008).

In the absence of such a direct expression in section 49.226 regarding a lease, we consider whether the definition of fair market value itself, as a matter of law,[8] imposes any constraints on a district board's discretion to make that determination. Section 49.226 does not define or otherwise elaborate on the phrase "fair market value." Nor has a court construed the phrase as used in this statute. However, Texas courts have generally defined "market value" as the "'price the property will bring when offered for sale by one who desires to sell, but is not obligated to sell, and is bought by one who desires to buy, but is under no necessity of buying.'" *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001) (quoting *State v. Carpenter*, 89 S.W.2d 979, 980 (Tex. 1936)); *accord State v. Windham*, 837 S.W.2d 73, 77 (Tex. 1992); *see also* Tex. Att'y Gen. LO-98-082, at 2; Tex. Att'y Gen. Op. No. DM-441 (1997) at 4.

No decision that we find addresses whether fair market value as used in Water Code section 49.226(a) or in a similar context requires valuing leased public property as encumbered or

---

[7]While a court has construed the term "sale" to include an "exchange" of property, we find no Texas case that has construed the term "exchange" to include a sale. *Cf. Bowling v. City of El Paso*, 525 S.W.2d 539, 541 (Tex. Civ. App.—El Paso 1975, writ ref'd n.r.e.) (acknowledging "that there is a technical distinction between a sale and an exchange of property," and construing the term "sale" in the statute at issue to encompass an "exchange" because of the purpose of the statute); *see also* THE NEW OXFORD AMERICAN DICTIONARY 592 (2001) (defining the term "exchange" when used as a verb as to "give something and receive something of the same kind in return"); BLACK'S LAW DICTIONARY 585 (7th ed. 1999) (defining "exchange" when used as a noun as "[t]he act of transferring interests, each in consideration for the other").

[8]*See* Tex. Att'y Gen. LO-98-082, at 3 ("The method used to calculate the fair market value of a particular property and the factors that must be considered in arriving at the fair market value of a particular piece of property are for a qualified appraiser to determine in accordance with accepted standards of appraisal; they are not questions of law that are susceptible to the opinion process.") (footnote deleted).

unencumbered by the lease. And no statutory definition of general application aids us in making that determination. The only Texas decision we find addressing this issue is in the context of a private equipment lease containing an option to purchase.

In a 2007 unpublished memorandum opinion, the Amarillo Court of Appeals considered the fair market valuation of equipment leased under an operating agreement and sold to the lessee. *See Brogan, Ltd. v. Brogan*, No. 07-05-0290-CV, 2007 WL 2962996, *6 (Tex. App.—Amarillo Oct. 11, 2007, pet. denied) (mem. op.). Under the operating agreement, the value of the equipment included the equipment's value at the end of the lease term plus the lease payments representing payment of principal and interest. *Id.* Because the sale had occurred before the end of the lease term, the equipment was valued, in accordance with the operating agreement, by adding the "remaining lease payments discounted by the interest remaining to be paid, and the fair market value of the equipment at the end of the lease period." *Id.* The court determined that the valuation was consistent with Texas law, as well as the governing partnership agreement, because the valuation comported with the broad definition Texas courts give to the phrase "fair market value," namely, "the price a piece of property would bring on the open market if the seller and buyer were not compelled to enter into the transaction." *Id.* (citing *City of Harlingen*, 48 S.W.3d at 187). More significantly, as relevant here, the *Brogan* court, citing the Fifth Circuit Court of Appeals's 2001 decision in *Petula Associates v. Dolco Packaging Corp.*, stated: "Moreover, the value of a lease is considered under Texas law in a determination of fair market value when the property is sold from lessor to lessee." *Id.*; *see also Petula Assocs. v. Dolco Packaging Corp.*, 240 F.3d 499, 503–04 (5th Cir. 2001). Even though no Texas court had considered this precise issue, the *Brogan* court did not provide further analysis.

In *Petula*, the Fifth Circuit Court of Appeals considered a commercial building lease giving the lessee the option to purchase the premises at fair market value. *Petula*, 240 F.3d at 501 (reciting factual background). The lessee's appraiser valued the property as if it were not subject to the lease and arrived at the figure of $2.75 million; the lessor's appraiser valued it subject to the lease and arrived at a $5.15 million value. *Id.* (The leased fee was more valuable than the unleased fee because the lease provided for increasing the rents over the life of the lease. *See id.* at 503.) The district court, among other things, had ordered another appraiser to be appointed to value the property as unleased. *Id.* at 501–02. The lessor appealed to the Fifth Circuit Court of Appeals.

The *Petula* court concluded that the leased property must be valued subject to the lease. *Id.* at 503–04. The court noted that the Texas courts had consistently defined "fair market value" broadly as the price a piece of property would receive on the open market if the seller and buyer were not required to enter into the transaction. *Id.* at 503 (citing *Windham*, 837 S.W.2d at 77). Consequently, the *Petula* court stated that when the phrase is used in a contract governed by Texas law, "it may be presumed that the parties intended the term to be understood according to this meaning, absent a clear indication to the contrary." *Id.* (citing RESTATEMENT (SECOND) OF CONTRACTS § 202(3)(a) (1981)). The court then concluded that "[i]f Texas's definition of 'fair market value' is applied, the value of the lease should be considered." *Id.* The *Petula* court offered as an example an Arizona case—*TCC Enterprises v. Estate of Erny*—that applied the definition of fair market value, characterized by the *Petula* court as identical to the Texas definition, to conclude that the lease must be considered because a buyer in the open market would purchase the property

only as a leased fee estate. *Id.*;[9] *see TCC Enters. v. Estate of Erny*, 717 P.2d 936 (Ariz. Ct. App. 1986). The *Petula* court explained that, here, what the lessor had to sell was an "estate subject to a lease"[10] and "fair market value must reflect the value of that which can be sold." *Id.* Finally, the court concluded:

> Absent explicit language indicating that the lease should or should not be included in determining fair market value, the district court erred in deviating from the definite and fixed meaning given to the term "fair market value" in Texas contract law, which would include the value of the lease.

*Petula*, 240 F.3d at 503–04. In short, the *Petula* court held that, under Texas law, fair market value includes the value of a lease unless the governing contract clearly provides otherwise.

We make the following observations about the *Brogan* and *Petula* decisions. First, they are factually distinguishable from the facts with which we are presented. Both cases construed private lease transactions that contained express and negotiated options to purchase the leased property. *See Petula*, 240 F.3d at 501–02; *Brogan*, 2007 WL 2962996 at *6. In contrast, at issue here is a statute governing the sale of surplus public property that does not, on its face, even contemplate the existence of a lease on such property. Moreover, the property leases here, we are informed, do not provide an option to purchase. *See* Authority's Reply Brief, *supra* note 4, at 3. Second, a Texas court construing Water Code section 49.226 or a similar statute may not necessarily follow the two cases' view of the law. The Arizona case that the Fifth Circuit Court of Appeals relied on is not representative of the case law in other jurisdictions as to the valuation of land encumbered by a lease when sold to the lessee. *See, e.g., Napleton v. Ray Buick, Inc.*, 704 N.E.2d 864, 870–71 (Ill. App. 1999) (relying on affirmative lease terms "clearly indicat[ing] that the parties did not intend for the

---

[9]The Arizona court stated:

> Erny's estate is not now in a position to sell unencumbered fee simple to the subject property, for it does not own such fee. The estate they now hold and could sell is a "leased-fee" estate. Market value is determined by hypothesizing a sale; it is that price a desirous but unobligated purchaser would pay a desirous but unobligated seller after consideration of all uses to which the property is adapted and for which it is capable of being used. Until 2002 the subject property is capable of use only in accord with the lease terms; the hypothetical sale price must be adjusted accordingly. We hold that the current market value of the lessor's interest in leased property is the value a purchaser would pay for what the owner-lessor has to sell, the fee subject to the lease.

*TCC Enters. v. Estate of Erny*, 717 P.2d 936, 937 (Ariz. Ct. App. 1986) (citation and footnote omitted).

[10]The *Petula* court noted in a footnote the following with respect to what the lessor had to sell, i.e., an estate subject to a lease: "Because Texas law defines 'fair market value' with reference to an unobligated seller and an unobligated buyer, we must disregard the obligations placed on Petula [the lessor] and Dolco [the lessee] by the purchase option contained in the lease." *Petula*, 240 F.3d at 503 n.4.

leasehold to merge with the fee when the lessee exercised the option to purchase" and lease language stating "that the lease and the options to purchase should be included in the calculation of the purchase price" for its conclusion that the lease would be considered in determining purchase price); *Taylor v. Fusco Mgmt. Co.*, 593 So.2d 1045, 1047 (Fla. 1992) (stating that absent specific language to the contrary, the market value of leased property at the time a lessee exercises an option to purchase should be calculated as if the property were unencumbered by the lease; "[a]ny intent to value the property otherwise should be clearly stated in the lease"). Third, because Water Code section 49.226 predates the *Petula* and *Brogan* decisions, a court might not necessarily find them persuasive in construing the statute. *See* Act of May 25, 1995, 74th Leg., R.S., ch. 715, § 2, 1995 Tex. Gen. Laws 3755, 3775. It cannot be presumed that the Texas Legislature intended in section 49.226(a) to adopt the construction placed on the phrase "fair market value" by these courts. *See Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 46 (Tex. App.—Fort Worth 2002, no pet.) ("Because the provisions in the Texas statute predate their federal counterpart, we cannot presume that the Texas Legislature intended to adopt the construction placed on the wording by federal courts."). And, of course, a Texas court is not bound by federal interpretations of Texas statutes. *See Jeffery v. State*, 169 S.W.3d 439, 443 n.1 (Tex. App.—Texarkana 2005, pet. ref'd) ("Although Fifth Circuit opinions . . . may be relied on as persuasive authority, we are obligated to follow only higher Texas courts and the United States Supreme Court.").

But, while recognizing the distinctions and the absence of fully developed Texas jurisprudence supporting the *Brogan* and *Petula* decisions, we cannot disregard these two decisions. *See, e.g.*, Tex. Att'y Gen. Op. Nos. GA-0563 (2007) at 6 ("[T]his office cannot ignore or overrule judicial decisions . . . ."), GA-0279 (2004) at 5 (stating that the attorney general cannot legislate or establish binding judicial precedent, but "may advise only about the current status of the law"), JC-0507 (2002) at 8 ("[T]he Office of the Attorney General cannot overrule a judicial decision."). The two cases' statement of the law—that application of the Texas courts' definition of fair market value includes the value of the lease—is not limited to their particular facts. We can see no reasonable basis for not applying this judicially established definition of the phrase "fair market value" to that phrase as it is used in Water Code section 49.226(a). Moreover, the *Brogan* and *Petula* statement of the law is consistent with appraisal industry standards that require the effects of a lease be considered when appraising property. *See* APPRAISAL STANDARDS BOARD, UNIFORM STANDARDS OF PROFESSIONAL PRACTICE, S.R. 1-2(e) (2008–2009); *see also Petula*, 240 F.3d at 503 n.6 ("Indeed, appraisal industry standards indicate that the effects of a lease must be considered."). Texas law requires persons licensed or authorized to appraise property to comply with these industry standards or other standards provided by rule that are at least as stringent. TEX. OCC. CODE ANN. § 1103.405 (Vernon Supp. 2007) (Real Estate Appraisals). Finally, we have not found any direct Texas judicial authority to the contrary.

Thus, we presume that when the Legislature used the phrase "fair market value" in section 49.226(a), it intended the phrase to have its established meaning under Texas law. *Petula*, 240 F.3d at 503–04; *Brogan*, 2007 WL 2962996 at *6; *see also Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) (stating that a court must presume that the Legislature adopted an enactment "with complete knowledge of the existing law and with reference to it" (citing *McBride v. Clayton*, 166 S.W.2d 125, 128 (Tex. 1942))). Because section 49.226(a) does not contain explicit statutory

language to the contrary, "fair market value" as used in the statute includes the value of a lease to which the property is subject. Accordingly, we conclude that the established definition of "fair market value" requires the Authority's board to value the real property leased to the private lessees as encumbered by the existing leases on the property. Given our conclusion, we do not consider application of the equitable doctrine of merger.[11] *See also infra* p. 9 (discussing Tex. Att'y Gen. LO-98-082).

## B.    Constitutional Constraints

You also ask whether using the discounted sales price reflecting the unexpired lease term—which we understand to mean the lower sales price resulting in this particular instance from valuing the property as encumbered by the existing leases—would violate article III, section 52 of the Texas Constitution. Request Letter, *supra* note 1, at 2. We do not—and cannot—determine the actual value or sale price of any property. Nor do we determine here that valuing the Authority's property as encumbered by the leases results in a lower sale price. You indicate that valuing the Authority's property as encumbered by the leases results in a lower sale price because of the below-market rates charged under those leases. *See id.* at 1; *cf. Petula*, 240 F.3d at 503 (noting that in an Arizona case, the effect of including the value of the lease was to decrease the fair market value, whereas in the Texas case, because of the graduated rent schedule, the effect of including the lease is to increase the fair market value); THE APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE 82, 83 (12th ed. 2001) (explaining that the value of a leased fee or fee simple may be less when the lease rent is below market and suggesting that if the rent is at the market rate, consideration of the lease generally has a neutral effect). We assume that to be the case for the purposes of addressing your concern regarding article III, section 52.

Article III, section 52(a) generally forbids the Legislature from authorizing a political corporation or political subdivision "to grant public money or thing of value in aid of, or to any individual, association or corporation." TEX. CONST. art. III, § 52(a); *see also* TEX. SPEC. DIST. CODE ANN. § 8502.001(a) (Vernon 2007) ("The [A]uthority is a river authority, a governmental agency, a municipality, and a body politic and corporate.").

The suggestion that a valuation of public property as encumbered by unexpired lease terms may violate article III, section 52(a) is largely premised on this office's conclusion in Attorney General Letter Opinion 98-082. *See* Authority's Brief, *supra* note 4, at 7; Authority's Reply Brief, *supra* note 4, at 3. In that opinion, this office addressed the sale of city land to the private lessees

---

[11]We also note that Texas courts disfavor application of the merger doctrine and do not apply it when it would be "disadvantageous" to the person acquiring the two different property estates. *See Steger*, 134 S.W.3d at 376 (stating that "application of this doctrine is disfavored in Texas" (citing *Ferguson v. Ragland*, 243 S.W. 721, 724 (Tex. Civ. App.—San Antonio 1922, writ ref'd), *Montgomery v. Browder*, 930 S.W.2d 772, 781 (Tex. App.—Amarillo 1996, writ denied), *Smith v. U.S. Nat'l Bank*, 767 S.W.2d 820, 823 (Tex. App.—Texarkana 1989, writ denied), *West v. Seigler*, 265 S.W.2d 618, 620–21 (Tex. Civ. App.—Fort Worth 1954, writ ref'd n.r.e.), *Huselby v. Allison*, 25 S.W.2d 1108, 1112–13 (Tex. Civ. App.—Amarillo 1930, writ dism'd w.o.j.))). The lessees argue that application of the merger doctrine would be disadvantageous to them. *See* Lessees' Brief, *supra* note 3, at 11. We do not determine whether application of the merger doctrine would or would not be disadvantageous to the lessees.

of the land at a price equal to the land's fair market value pursuant to Local Government Code section 272.001(h). *See* Tex. Att'y Gen. LO-98-082, at 1. The city had appraised the land based on its "underlying fee and reversionary interest," but the lessees asserted that the appraisal should consider "the fact that the land is burdened for some period of time by the lease." *Id.* The opinion first concluded that because the sale would be to the lessees of the property, the merger doctrine[12] would apply to extinguish the leases, the lessees would acquire the whole of the city's estate, and thus, the land must be valued as unencumbered by the leases. *Id.* at 3–4. Accordingly, the opinion advised, the lessees in these circumstances must pay for the whole fee estate—which included the right to receive rents for the remaining lease term and the city's reversionary interest—because section 272.001(h) did not authorize the city to give the lessees the value of future rental payments as the lessees contended. Additionally, the opinion suggested, discounting the purchase price by subtracting the value of future rents could violate the article III, section 52's prohibition against granting a "thing of value . . . to any individual." *Id.* at 4.

Texas Attorney General Letter Opinion 98-082 did not construe "fair market value"[13] in relation to a lease and preceded the *Brogan* and *Petula* decisions. Our conclusion here is based on this case law that provides that the established definition of fair market value includes the value of a lease. By definition, the sale of property at its fair market value cannot violate article III, section 52(a). "It has been uniformly held that the resale of [] property at its fair [market] value is not a gratuity or an extension of public credit." *Davis v. City of Lubbock*, 326 S.W.2d 699, 709 (Tex. 1959) (rejecting the contention that property purchased by a city for urban renewal "may not be resold at its 'fair value' which might be less than the [city's] cost of acquisition and clearance of such land"); *see also* Tex. Att'y Gen. Op. No. GA-0371 (2005) at 3 n.4 ("Certainly a land sale for fair market value could not be challenged as a gratuitous transaction." (citing *Walker v. City of Georgetown*, 86 S.W.3d 249, 260 (Tex. App.—Austin 2002, pet. denied))). Moreover, in this instance, the "windfall" or "discount" the Authority's lessees may receive is not the direct result of valuing the property as encumbered by the lease, but the result of the previously granted discounted or below-market lease rates. *Cf. Petula*, 240 F.3d at 503 (noting that in the Arizona case, the effect of including the value of the lease was to decrease the fair market value, whereas in the Texas case, because of the graduated rent schedule, the effect of including the lease is to increase the fair market value); THE APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE 82–3 (12th ed. 2001) (explaining that the value of a leased fee or fee simple may be less when the lease rent is below market). The question of the validity of the discounted or below-market lease rates is not before us.

Texas Attorney General Letter Opinion 98-082 has been superseded by recent court decisions and is modified to the extent inconsistent with our conclusion here.

---

[12]*See supra* notes 5 & 11.

[13]*See supra* note 8.

## S U M M A R Y

The Brazos River Authority (the "Authority"), a special law conservation and reclamation district under Texas Constitution article XVI, section 59, owns real property surrounding Possum Kingdom Lake that is leased to private parties at below-market lease rates. The Authority is formulating procedures to offer to sell the property to the lessees of the property.

The first question presented is whether the leased property must be valued as unencumbered by the leases or encumbered by the unexpired terms of the existing leases for the purposes of determining the sales price if the property is offered for sale to the lessees. If the property is offered for sale to the lessees, the Authority would sell the property pursuant to Water Code section 49.226. Section 49.226(a) generally provides that surplus real or personal property owned by a water district may be sold in a private or public sale or be exchanged. Section 49.226(a) requires that the surplus property be exchanged for "like fair market value." The Authority and the lessees assume that this fair market provision applies to the sale of the Authority's property. The lessees contend that the fair market value provision in section 49.226 requires the Authority to value the property as encumbered by the leases. Because section 49.226(a) does not explicitly state that a lease may not be considered, fair market value as used in the statute has the meaning established by the Texas courts, which meaning includes the value of a lease. Thus, application of the established judicial definition of fair market value requires the Authority to value the property as encumbered by the leases.

The second question presented is whether using the discounted sales price resulting from valuing the Authority's property as encumbered by the leases would violate Texas Constitution article III, section 52(a), which prohibits gratuitous transfers of public funds to individuals or private parties. Using a discounted sales price—resulting in this particular instance from valuing the property as encumbered by the existing leases—would not violate article III, section 52(a).

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee